ROSE et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   September 21, 1915.)

No. 4392.

1. CONSPIRACY ⬤⟳43—CONSPIRACY TO USE MAILS TO DEFRAUD—DEPOSIT OF
LETTERS BY ANOTHER.
    An indictment under Criminal Code (Act March 4, 1909, c. 321) § 37, 35
Stat. 1096 (Comp. St. 1913, § 10201), for conspiracy to commit an offense
against the United States by devising a scheme to defraud and by using
the mails in the execution of such scheme, which alleges as an overt act
that defendants deposited or caused to be deposited two certain described
letters in the mails, is supported by proof that defendants conspired to
defraud as charged and caused another to deposit such letters in the post
office; the act of such other under such circumstances being the
act of defendants.
    [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99;
Dec. Dig. ⬤⟳43.
    Nonmailable matter, see notes to Timmons v. United States, 30 C. C.
A. 79; McCarthy v. United States, 110 C. C. A. 548.]

2. CRIMINAL LAW ⬤⟳720—TRIAL—COMMENTS OF DISTRICT ATTORNEY ON EVI-
DENCE.
    Remarks by the District Attorney in his argument to the jury in com-
menting on the evidence *held* not improper.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1670, 1671;
Dec. Dig. ⬤⟳720.]

In Error to the District Court of the United States for the Western
District of Missouri; Arba S. Van Valkenburgh, Judge.

Criminal prosecution by the United States against Marion W.
Rose and others.   From a judgment of conviction, defendant Rose
brings error.   Affirmed.

James T. Neville, of Springfield, Mo., for plaintiff in error.

William G. Lynch, Asst. U. S. Atty., of Kansas City, Mo. (Francis
M. Wilson, U. S. Atty., of Kansas City, Mo., on the brief), for the
United States.

Before HOOK, Circuit Judge, and YOUMANS and ELLIOTT,
District Judges.

ELLIOTT, District Judge.   The plaintiff in error, Marion W.
Rose, hereinafter referred to as the defendant, was jointly indicted
with John B. Thomas and Frank B. Warner for a violation of sec-
tion 37 of the federal Penal Code.   The conspiracy charged in the in-
dictment was to commit the offense against the United States defined
by section 215 of said Code (Comp. St. 1913, § 10385).

[1] It is conceded in the statement of the case made by counsel for
the defendant that "the indictment is in correct form," and a recita-
tion of the scheme to defraud as set forth therein is not necessary
to a determination of the issues presented by the record.   Suffice
it to say that an intent was alleged on the part of the coconspirators
to use the United States mails, and the overt acts alleged, to effect
the object of said conspiracy, were that the conspirators did on or

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

about the 9th day of June, 1913, at Willow Springs, Howell county, Mo., unlawfully, knowingly, and feloniously deposit and *cause to be deposited* in the post office of the United States at that place for mailing and delivery by the post office establishment of the United States two certain letters, one addressed to the Hanover National Bank at New York City, N. Y., and the other to the Continental & Commercial National Bank at Chicago, Ill., both inclosing certain fictitious drafts and bills of lading.

The first contention of the defendant is that the court erred in refusing the following instruction:

"The court further instructs the jury that the crime which the defendants are charged with having committed consists of two branches: First, a combination or agreement between two or more of the defendants to commit an offense against the United States as hereinafter set forth; and, second, some act of one of the defendants so conspiring tending to effect the object of such conspiracy. The conspiracy charged is to commit an offense against the United States by devising a scheme to defraud and by using the mails in so doing as hereinbefore stated, which are applicable to the first branch of the crime. The acts charged to have been committed by one of the conspirators to effect the object of such conspiracy are the mailing of two certain letters, one to the Hanover National Bank of New York City and the other to the Continental & Commercial Bank of Chicago, Ill., the charge being that said letters were deposited in the post office establishment of the United States at Willow Springs, Mo. It is as necessary for the government to prove one or both of these acts of mailing these letters of one of the conspirators as it is to prove the conspiracy or combination between the parties, and although you may find from the evidence that the conspiracy was entered into between the defendants M. W. Rose and Warner to commit an offense against the United States, as in the indictment set forth, yet if you further find from the evidence that the defendant J. B. Thomas mailed, or caused to be mailed, the two letters which are charged in the indictment as the overt acts, and that he, the said J. B. Thomas, was not at the time one of the conspirators, and had not entered into such conspiracy or combination, then the necessary facts constituting the crime charged in the indictment have not been proven as to the defendant M. W. Rose, and you will find him not guilty."

The second contention is:

"That the court erred in its instruction to the jury that it might find the defendant Rose guilty, even though it found that the defendant Thomas was not one of the conspirators as charged in the indictment, and in charging the jury that, even though Thomas was not a conspirator, yet if Rose and Warner caused him to mail the letters, then that would be a causing to commit the overt act charged, and would satisfy the requirements of the statute."

These exceptions must be determined in the light of certain facts that appear undisputed upon the face of this record. The record clearly establishes the conspiracy in the terms and for the purpose stated in the indictment, by the defendants Rose and Warner. The forged drafts and bills of lading were forwarded by Warner to Rose, and by the defendant Rose forwarded to Thomas in a letter signed "Mt. View Produce Co." Thereupon Thomas wrote letters appearing in full in the record, and deposited the letters, with the fictitious drafts and bills of lading, in the post office at Willow Springs, addressed as set forth in the indictment. The record clearly showed that it was the intent and purpose of the defendants Rose and Warner that these fictitious drafts and bills of lading should be sent to

Thomas and that Thomas, through the Bank of Willow Springs of which he was president, should send the drafts and bills of lading direct to the several places where shipments were purported to be made, for collection, etc. The evidence is clear that both defendants Rose and Warner conspired and contemplated the collection of the fictitious drafts by causing Thomas to deposit the said drafts and bills of lading in the post office at Willow Springs, addressed to a bank at the place of business of the parties upon whom the fictitious drafts were drawn.

Without intending to fully review the undisputed evidence, it may be said that, upon the question of the prior relations of the defendants Rose and Warner, it appeared that Rose was a partner in the partnership of Rose & Daniels Commission Company at Willow Springs, and that Warner became an employé of that company in April, 1912, and continued until it was dissolved October 1st of the same year; that Warner became an employé of the Daniels Commission Company, owned and controlled by defendant Rose's partner and nephew, one Claude F. Daniels, at Willow Springs, and worked for it from October, 1912, until November, 1912, when it quit business; that during the time covered by the business of the Rose & Daniels Commission Company, and the Daniels Commission Company, this defendant Rose was an employé of the St. Louis & San Francisco Railway Company, working as a brakeman and conductor, running between Willow Springs and Grandin, Mo.; that further business connections were had between these two defendants, unnecessary to quote here, and from that time on numerous letters and telegrams, some of which were in code, passed between the defendants Warner and Rose, the latter being at Willow Springs or Grandin, Mo., and the former in the state of Iowa.

They met in May at St. Louis, pursuant to an arrangement through telegrams in which a code was used. In May, when the defendants Rose and Warner met in a hotel in St. Louis, they talked over the matter of forging drafts and bills of lading, and they did forge several bills of lading and drafts and invoices of shipment, and these were inclosed in a letter addressed to J. B. Thomas, care of the Bank of Willow Springs, which letter was given to and kept by Rose.

These drafts and bills of lading were made in the name of Charles Kline, who had been with the Rose & Daniels Commission Company, and the Daniels Commission Company, and later went with Warner in business at Plattville, Wis. Later in the same day the defendants Warner and Rose discussed the drafts and bills of lading which they had made out, and concluded that they were rather large, and determined to fix up others that would appear more reasonable.

Prior to this time Rose had sent to Warner certain bills of lading, which had been issued by the St. Louis & San Francisco Railway Company to the Rose & Daniels Commission Company, and the Daniels Commission Company, for the return of empty coops and egg cases. These Warner and Rose had with them at St. Louis, at the time above referred to. Warner erased all writing upon them, except the agent's name, and filled in the name of Charles Kline, shipper, and made them cover a number of barrels of butter and cases of eggs, which

purported to be consigned to certain shippers in Chicago and New York, named in the indictment herein, to which were attached drafts which they forged at the time, which forged drafts were, with the bills of lading, turned over to the defendant Rose, with the understanding between Rose and Warner that he (Rose) was to mail them somewhere on the train to J. B. Thomas, at Willow Springs, and that Thomas would send them, through the United States mail, immediately, for collection.

The defendants Rose and Warner separated, and on the 10th day of May Rose telegraphed to Warner, in substance, that nothing could be done; that the drafts and bills of lading which they had prepared at St. Louis could not be used, for the reason that Kline objected to his name being used. On the next day the defendant Rose wrote the defendant Warner a letter, in which he referred to Kline and his objections, and asked Warner to send one or two bills of lading to the bank, and that he should give the bank the power to reduce the draft in case the person to whom it was sent thought it was too high. Thereupon Warner, following the instructions from the defendant Rose, wrote a letter addressed to Thomas at Willow Springs, Mo., asking Thomas for $300, the amount which he claimed would be necessary for him to have to carry the deal with respect to the forged drafts and bills of lading.

Further communications were had between the defendants Warner and Rose with reference to this conspiracy and effecting its purpose and object, and on June 6th Rose wrote a letter to Warner, inclosing him $10, and the evidence shows that Warner used the money in getting up stationery for the fictitious Mountain View Produce Company, and thereupon, pursuant to the agreement between them, inclosed the fictitious drafts and bills of lading referred to in the indictment in a letter addressed to Rose at Grandin, Mo., and Rose on the 9th day of June acknowledged receipt thereof by letter. Thereupon, pursuant to the plan and conspiracy, defendant Warner having forged these drafts and bills of lading and sent them to defendant Rose, the drafts and bills of lading were inclosed by Rose in a letter received from Warner and addressed to J. B. Thomas, care Bank of Willow Springs. This letter to J. B. Thomas last mentioned, in which Rose inclosed the fictitious drafts and bills of lading, was as follows:

"Mt. View, Mo., June 7, 1913.

"J. B. Thomas, c/o Bank of W. S.—Dear Sir: Please find enclosed 7 drafts for collection. Please ask a wire report on each one; also please credit on acc't.

"Yours truly,                                        Mt. View Produce Co."

At the time that Warner prepared the fictitious drafts and bills of lading and forwarded them to Rose he also wrote a letter to each of the produce men whom the defendants intended to defraud, stating that the "Mountain View Produce Company," was shipping the produce mentioned in the bills of lading. Thereafter one of the commission houses, having made inquiry with reference to a car and having been informed that no such car had been shipped, wrote a communica-

tion to the Bank of Willow Springs, and at about that time this defendant Rose wrote to the defendant Warner, and told him that this house had learned that the drafts and bills of lading were forgeries, thus showing that Rose was keeping in touch with the steps taken for the collection of the drafts.

It is clear that the entire correspondence between these defendants, and the conversations testified to, appearing in the record, showed the conspiracy, and that the forged drafts and bills of lading should be sent to Thomas, and that they would procure him to mail the drafts and bills of lading to the several places where shipments were purported to have been made, for collection. We think it cannot be seriously contended that the record fails to show the intent and purpose of the defendants Rose and Warner to deposit the drafts and bills of lading in the post office at Willow Springs, through the instrumentality of Thomas, to the end that they should be sent to the places desired, for collection.

It further conclusively appears that it was the defendant Rose that was making the arrangements with Thomas to mail the drafts for collection, and that he had knowledge, not only of the mailing, but of the lack of progress made in the collection, when the first inquiry was made. We have recited the foregoing facts simply to show that the conspiracy was formed, and the purpose of the conspiracy, and the intent and purpose to cause the fictitious drafts and bills of lading to be mailed by Thomas at the post office at Willow Springs for the purpose of collection.

There is no contention here that the conspiracy by the defendants Rose and Warner was not proven, and in considering the acts of defendant, and determining to whom the responsibility for the mailing of these letters attaches, we must apply the rule of law that that person is responsible for an act who either performs it himself or causes another to perform it at his request or by his direction; that is to say, it is not necessary, before this defendant Rose can be held responsible for whatever may legally attach thereto, that he should in person have placed the fictitious drafts and bills of lading in an envelope and himself have written or stamped the address thereon, and in person have deposited them in the mails. If he procured or caused Thomas to perform these acts for him, or by his order, the law regards his relation thereto the same as though he had himself and in person performed the acts. U. S. v. Newton (D. C.) 52 Fed. 288.

When these defendants, Rose and Warner, got together at St. Louis and planned to defraud the parties named in the indictment, in the manner set forth therein, by causing Thomas to send these fictitious drafts and bills of lading through the United States mails, and in pursuance of that plan this defendant Rose did forward these drafts and bills of lading to Thomas for collection, and pursuant to an arrangement that Thomas should send the drafts through the mails to the parties to be defrauded, the act of Thomas in mailing the drafts was the act of the defendants Rose and Warner as fully as if they had done the act of mailing themselves. Hyde v. U. S., 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

Thomas may or may not have acted with knowledge, so as to be guilty himself. But the case does not turn upon that point. Where the act of mailing was done by the procurement of the defendants Rose and Warner, it is their act. Richardson v. U. S., 181 Fed. 1, 104 C. C. A. 69. It has been held that, where one sets in operation and makes use of an agency which, as he knew at the time, would, according to its established and regular course, carry the objectionable matter through the mail to the persons to whose attention he designed it to be called, he is responsible for the mailing of the objectionable matter. Demolli v. U. S., 144 Fed. 363, 75 C. C. A. 365, 6 L. R. A. (N. S.) 424, 7 Ann. Cas. 121.

The record in this case therefore justifies a finding of responsibility on the part of this defendant for mailing the letters in controversy, independent of the statute, and the allegation contained in the indictment, charging that he "caused to be deposited in the postoffice," etc. The instruction of the court complained of, in our judgment, correctly states the law with reference to the responsibility of this defendant Rose, as to what constitutes "causing them to be mailed."

Of course, if the defendant Thomas was a party to the conspiracy, his mailing the letters in the manner described was a sufficient commission of those overt acts to bind all the other parties to the conspiracy. And the trial court, we think, correctly said, in the instruction to which the last exception is taken:

"If the defendant Thomas was not, but the defendant Rose was, a party with the defendant Warner in this conspiracy, then the fact that their plan was to send all these drafts and bills of lading in this way to go into the hands of his banker in this way, in order that he might send them out for collection in this way, by the use of the mails, would be a causing them to be mailed, which conforms to all the requirements of the statute; so that the question now of the mailing is, it would seem, sufficiently established. The only question being then who were the parties to the conspiracy who were bound and chargeable with the acts charged in the indictment."

The defendant attaches some importance to the claim that the defendant Thomas was a party to be injured by the conspiracy, and therefore that he could not be made the instrumentality by which the guilt of the conspirators was to be established. In other words, that because of the injury that was to accrue to him, his act could not be made the act of the conspirators. We can see no merit in this claim. If he was the instrumentality chosen by the coconspirators for the doing of this unlawful thing, and he actually used the United States mails, pursuant to the purpose and request of the conspirators, then the conspirators were the moving cause, and are responsible for causing the unlawful use of the mails, an act prohibited by the statute. We are of the opinion that the court committed no error in refusing the instruction requested by the defendant, or in giving the instruction excepted to by the defendant.

[2] The next contention of the defendant is that the court erred in overruling defendant Rose's objection to certain remarks made in the argument by the United States district attorney, which remarks and the record with reference thereto, are as follows:

"The question merely in this case is as to whether or not Thomas gets away. I am not going to spend any time on Mr. Rose at all. I take it that there is not a man upon the jury who has not already made up his mind as to Mr. Rose. I take it that that absolutely stands admitted with you, gentlemen, that he is guilty; that it points to his guilt by more roads than I could possibly name.

"Counsel for Defendant: We except to the remark, your honor.

"Court: Of course, I take it counsel would not want the jury to understand it stands admitted.

"United States Attorney: How?

"Court: The jury understands that is not what counsel meant and they are not so to regard it.

"United States Attorney: In using the words 'stands admitted,' gentlemen, I did not desire you to understand that he has pleaded guilty in this court. I did not desire you to understand anything except this: That the evidence in this is such that no sane man can arrive at any other conclusion, and with that I drop that feature of it. I won't discuss Mr. Rose any further. I will leave it to you to say whether or not he isn't guilty beyond a reasonable doubt, or any other kind of a doubt. I say to you in that connection, now, who is it that denies that Mr. Warner told the truth when he went on the witness stand?

"Counsel for ·Defendant: We except to that, your honor.

"United States Attorney: I am not referring to any one.

"Counsel for Defendant: Infringing upon the rights of the defendant and apparent in the opening statement.

"Court: Proceed with the argument.

"United States Attorney: Mr. Warner upon the witness stand stated certain matters. I repeat, who is it denies what Mr. Warner said? I am not going to discuss Rose any more. I am going to leave him with you gentlemen now, and there.

"Counsel for Defendant: We except to that remark and statement.

"Court: Proceed, proceed, Mr. District Attorney."

To which action of the court in overruling the defendant Rose's objection to the remarks the defendant at that time excepted.

The act of Congress permitting a defendant in a criminal action to appear as a witness in his own behalf, on his request, declares that his failure to request to be a witness in the case *shall not create any presumption against him.* To prevent such presumption being created, comment, especially hostile comment, upon such failure must necessarily be excluded from the jury. The minds of the jurors can only remain unaffected from this circumstance by excluding all reference to it. Wilson v. U. S., 149 U. S. 60, 13 Sup. Ct. 765, 37 L. Ed. 650. Has there in this case been a disregard of this provision?

We are of the opinion that a fair interpretation of the language of the United States attorney, together with his explanation, does not warrant the interpretation placed upon it by counsel for the defendant, and *the entire statements of the United States attorney,* taken together, cannot be said to be more than an argument upon his part that the evidence of the government is uncontradicted and unexplained. This, we understand, is permissible. Carlisle v. U. S., 194 Fed. 827, · 114 C. C. A. 531.

Finding no merit in any of the errors assigned, judgment affirmed.