SHEA et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. August 3, 1918.)

No. 3079.

1. CRIMINAL LAW ⬅372(1)—EVIDENCE—OTHER OFFENSES.

Evidence of other frauds accomplished or attempted at substantially the same time, and inferably the outgrowth of the same general fraudulent scheme, *held* admissible on prosecution for using the mails in furtherance of scheme to defraud through fake horse race betting in a sham turf exchange.

2. CRIMINAL LAW ⬅424(5)—EVIDENCE—ACTS OF COCONSPIRATOR.

Telegram sent by defendants' coconspirator to another victim, the day after he lost his money, is not inadmissible, as being act done after the fraudulent scheme was at an end;· the general fraudulent scheme, fake horse race betting in sham turf exchanges, not being shown to have then been abandoned, and the telegram being part of the res gestæ.

3. CRIMINAL LAW ⬅424(3)—EVIDENCE—CONSPIRATORS—ARTICLES IN COCONSPIRATOR'S OFFICE.

There being evidence, on a prosecution for using the mails to defraud, tending to connect defendant T. with the general scheme to defraud through fake horse race betting in sham turf exchanges, the finding in another defendant's office on the day of arrest of paraphernalia adapted to use in the scheme was admissible against T., though he was not present at the finding.

4. WITNESSES ⬅266—CROSS-EXAMINATION—DEPRIVING OF BENEFIT.

The standing up of the named inspector, when witness, on cross-examination on a collateral matter going merely to his credibility, had stated he saw one of the inspectors, naming him, did not, as having deprived defendants of the benefit of cross-examination, entitle them to have witness' testimony identifying them stricken.

5. CRIMINAL LAW ⬅423(1)—EVIDENCE—CONSPIRACY.

The act of one of several associated in the transaction of a common enterprise, done in furtherance of the common object, is generally admissible against the others; and this applies generally to existing schemes to defraud, under Criminal Code, § 215 (Comp. St. 1916, § 10385), denouncing the offense of using the mails in the furtherance of a scheme to defraud.

6. CRIMINAL LAW ⬅787(1)—INSTRUCTIONS—FAILURE OF DEFENDANT TO TESTIFY.

Reference in charge to certain government testimony as uncontradicted does not violate Act March 16, 1878 (Comp. St. 1916, § 1465), declaring defendant's failure to testify shall not create any presumption against him; it not being plain that no one but defendants could have disputed the facts.

7. CRIMINAL LAW ⬅822(4)—FEDERAL COURTS—COMMENT OF JUDGE ON EVIDENCE.

· Part of charge as to turf exchange being a sham, considered with its context and the entire charge, held not to go beyond the rule in federal courts that the trial judge may express his opinions on the facts, and advise the jury regarding their conclusions thereon.

8. CRIMINAL LAW ⬅762(2)—FEDERAL COURTS—COMMENT OF JUDGE ON EVIDENCE.

In federal courts, trial judge may express his opinions on facts, and advise jury regarding its conclusions thereon, provided it is given to unequivocally understand that it is not bound thereby; his comments to be judicial and dispassionate, and leave jurors free to exercise their independent judgment.

9. CONSPIRACY ☞48—NATURAL CONSEQUENCES—USE OF MAILS—QUESTION FOR JURY.

Whether use of the mails to collect the check deposited in betting by the victim of a scheme to defraud by fake betting in sham turf exchanges, was not such a natural and probable consequence of the execution of the scheme that the other participants would naturally have foreseen the likelihood thereof, rendering them liable under Criminal Code, § 215 (Comp. St. 1916, § 10385), for acts of confederates, is a proper jury question.

10. POST OFFICE ☞49—USE OF MAILS TO DEFRAUD—EVIDENCE.

Evidence on prosecution for using the mails in furtherance of a scheme to defraud *held* not to show at most, a mere suggestion that the victim of the fraud used the mails for collecting his check and substituting cash.

11. CRIMINAL LAW ☞793—INSTRUCTIONS—ACTS OF COCONSPIRATORS.

Charge, on prosecution for using the mails in furtherance of a scheme to defraud, *held* not to amount to one to find defendants guilty, even though the use of the mails was a fresh and independent product of the mind of one of their confederates.

12. POST OFFICE ☞49—USING MAILS TO DEFRAUD—EVIDENCE—CUSTOM.

Proof of custom of banks to collect checks by mail is competent, on prosecution for using the mails in furtherance of a scheme to defraud, where check of victim on a distant bank was deposited in local bank for collection; persons of ordinary business experience being presumed to know of such custom.

13. POST OFFICE ☞49—USING MAILS TO DEFRAUD—EVIDENCE—"CAUSING."

Evidence, on prosecution for using the mails in furtherance of a scheme to defraud, *held* to warrant conclusion that defendants consciously participated in bringing about the use of the mails for the purpose, which would be a "causing" of such use, within Criminal Code, § 215 (Comp. St. 1916, § 10385), defining the offense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cause.]

14. CRIMINAL LAW ☞829(1)—INSTRUCTIONS—REQUESTS COVERED.

It is enough that the subject-matter of refused requested instructions was sufficiently covered by the charge given.

In Error to the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

John J. Shea and Edward Taylor were convicted of using the mails in furtherance of a scheme to defraud, and bring error. Affirmed.

See, also, 251 Fed. 433, —— C. C. A. ——.

Ralph Emery, George P. Hahn, and Cornell Schreiber, all of Toledo, Ohio, for plaintiffs in error.

E. S. Wertz, U. S. Atty., and J. C. Breitenstein, Asst. U. S. Atty., both of Cleveland, Ohio.

Before KNAPPEN and DENISON, Circuit Judges, and WESTENHAVER, District Judge.

KNAPPEN, Circuit Judge. Plaintiffs in error were convicted upon an indictment under section 215 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. 1916, § 10385]), for using the mails in furtherance of a scheme to defraud. The indictment named several defendants, in addition to plaintiffs in error, including one Collins and one Brown. The alleged fraudulent scheme is best understood from a brief statement of the government's claim, which the record

tends to sustain, and which is sufficiently covered by the indictment. The substance of the government's case is this:

Defendants operated in the Nasby Building, in Toledo, Ohio, a purely fictitious "turf exchange," equipped with paraphernalia apparently adapted thereto, including blackboard, charts, telephone and telegraph instruments, fictitious packages of money, betting tickets, etc. Hoblitzel, who resided in Marion, Ohio, while at Toledo on business, was met by Brown, who pretended to be acting for a syndicate of gamblers in betting on the turf exchange, and who won Hoblitzel's confidence, introducing him to Collins; the two bringing him to the "turf exchange" rooms referred to, where Hoblitzel was induced to bet his check for $5,000 on a pretended horse race, in the belief and on the false representation that Collins had advance information by wire from New York on the result of the races, whereby he always won the bets. It was announced that Hoblitzel had won $10,-000, but that the money could not be paid until $5,000 cash was substituted for his check—which several days later was done. It was then announced that Hoblitzel's bet turned out to have been lost, through an alleged misunderstanding of betting instructions, whereby the wager was laid on the wrong result. Hoblitzel was thus swindled out of his $5,000. The transaction extended from August 15 to August 25, 1914. The use of the mails will be referred to later.

The instant case is a companion to No. 3078, 251 Fed. 433, —— C. C. A. ——, this day decided, in which Shea alone is plaintiff in error, and which involved another alleged case of swindling through fake horse race betting by means generally similar to those charged to have been employed here. A former trial of that case was reviewed by us. Shea v. United States, 236 Fed. 97, 149 C. C. A. 307. On the former trial proof of the Hoblitzel transaction (the subject-matter of the indictment in the instant case) was received as evidence of intent and motive in the other case. In our opinion referred to, the substance of the evidence relating to each of the alleged frauds is stated. The alleged errors argued relate to the admission of evidence, the charge of the court as given, and refusals to charge. So far as seems practicable, we consider the questions in that order.

[1] 1. Proof of similar offenses. On August 14, 15, and 16, 1914 (which was about the time the Hoblitzel transaction started), there was published in a Detroit newspaper this notice:

"Gentleman will invest from $30,000 to $50,000 in modern fertile farm. Must be unincumbered. State size and acreage and full particulars in first letter. Owners only. Agents need not answer. Address Box R–20, News."

The evidence tended to show that Rundel, a farmer living in Oakland county, Mich., read and replied to the advertisement. Later he was called upon by one Collier, who claimed to be representing the "Guggenheims" in the prospective purchase of a farm. Rundel met Collier by appointment at Toledo, September 21, and was thereafter inveigled into a fictitious "turf exchange" in the Denison Building, where he was induced to bet $3,000 on a fake horse race, under representations similar to those made to Hoblitzel, and by which he was induced to make his bet. Rundel's money was lost by the claim that the

bet had been mistakenly laid on the wrong horse. The evidence tended also to show that one Millard, a farmer living near Rundel, also saw the advertisement in August, and answered it by mail. He was later called upon by Collier on September 5 and 17, who told a "Guggenheim" farm purchase story in substance as related by Collier to Rundel. The Millard transaction went no further than an agreement upon the purchase price, because of his refusal to add Collier's commission to the price of the farm and to bring the commission with him to Toledo.

The evidence of these transactions was properly admitted. There was testimony sufficiently connecting both plaintiffs in error with the Rundel transaction. True, neither plaintiff in error is directly shown to have been connected with the Millard incident; but the Rundel and Millard transactions were apparently the result of the Detroit advertisement with which there was testimony directly connecting Shea. Both these transactions were in progress at substantially the same time, and the same man (Collier) opened the fraudulent negotiations in both cases and by similar representations. The two alleged frauds—the one accomplished; the other attempted—were inferably the outgrowth of the same general fraudulent scheme charged, with which the evidence tended to connect both plaintiffs in error and in whose execution the testimony indicated fictitious "turf exchanges" were at different times maintained in the Nasby Building (where Hoblitzel was swindled), in the Denison Building (where Rundel lost his money), and in the Chamber of Commerce Building.

As to the admissibility generally of this class of testimony, we content ourselves with a reference to what was said on the subject in Shea v. United States, supra, 236 Fed. 102, 103, 149 C. C. A. 312, 313. The charge (an extract from which we print in the margin[1]) so limited the use of the Millard testimony as to remove any danger of undue prejudice.

[2] The telegram from Collins to Rundel was also properly admitted. It was sent September 25, 1914, the day after Rundel lost his money; but it is not for this reason subject to the objection of being an act done after the fraudulent scheme was at an end. The general fraudulent scheme is not shown to have been at that time abandoned; the telegram was part of the res gestæ. McDonald v. United States, 241 Fed. 793, 800, 154 C. C. A. 495, is not in point.

[3] 2. It was not error to admit, as against Taylor, evidence of the finding in Shea's office in the Spitzer Building, on the day of the arrest (October 5, 1914), of the large amount of paraphernalia apparently of the kind used in the fictitious "turf exchanges" and adapted to the fake betting schemes charged. The fact that Taylor was not present

[1] "The Millard testimony ought to be disregarded by you altogether, unless it is your judgment that some one then associated and confederated with either Taylor or Shea in the scheme to defraud, such as involved Rundel, and such as involved Hoblitzel, was the party who negotiated with Millard, and that his dealings with Millard were for the purpose of bringing the latter within the reach of the confederates in the alleged fraudulent scheme, that Millard might be victimized substantially in the same manner as Rundel, and Hoblitzel were defrauded, and substantially in the manner as alleged in the indictment."

when the paraphernalia were found is not material. There was evidence tending to show his connection with the general scheme to defraud by fake betting, in which scheme the paraphernalia are claimed to have been used.

[4] 3. One Blaine had testified to participation by both plaintiffs in error in renting rooms in the Chamber of Commerce Building. On cross-examination he stated that a post office inspector had shown him certain pictures, and in answer to a question whether he saw in the courtroom the inspectors who showed him the pictures said he saw one, whom he named, whereupon the inspector stood up. Plaintiffs in error moved to strike Blaine's testimony from the record and to instruct the jury to disregard it, on the ground that by the inspector's action they had lost the benefit of cross-examination. The motion was rightly denied. The meritorious question was one of identification of plaintiffs in error. The cross-examination related to a collateral matter, going merely to the credibility of the witness. The jury was presumably competent to give to the criticized incident whatever weight it deserved.

[5] 4. The charge as to alleged alibis. There was testimony that both Shea and Taylor were at the "turf exchange" in the Nasby Building on the occasion of certain important steps in the consummation of the alleged fraud, the dates thereof being expressly given—Taylor being alleged to have acted as manager of the pretended exchange; Shea, as its cashier. Both Shea and Taylor offered evidence, by way of depositions of others, relating to alibis covering the entire period of time involved. The charge of the court on the subject is criticized as instructing, in substance, that plaintiffs in error "could be convicted, although their alibis were fully established." We think the charge not subject to this criticism. On the contrary, the jury was instructed that, if the proof of alibis was sufficient to create a reasonable doubt of the defendants' guilt, they should be acquitted. It was said that, even if the government's witnesses, including Hoblitzel, were mistaken as to the presence of the defendants at the various times and places testified to, the jury might yet find them guilty on other evidence in the case. In this there was no error. The important question of their presence related, not to the precise date, but to the occasion, unless (as we cannot say) their presence on the precise date testified to was indispensable to guilt. Young v. United States, 249 Fed. 935, —— C. C. A. —— (decided April 2, 1918). The instruction that Hoblitzel's alleged mistake as to the presence of plaintiffs in error "would be merely to discredit him as a witness" was coupled with the express limitation—"if other evidence in the case convinces you beyond a reasonable doubt that Taylor was a member of the band whose fraudulent common purpose worked to defraud Hoblitzel." The act of one of several persons associated in the transaction of a common enterprise, and done in furtherance of the common object, is generally admissible as evidence against the others. See Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 249, 38 Sup. Ct. 65, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461. We think this principle applicable generally to existing schemes to defraud under section 215 of the Criminal Code.

We find no prejudicial error in refusing request No. 29. So far as it correctly stated the applicable rule, we think it sufficiently covered by the charge.

[6] 5. Reference to "uncontradicted testimony." Neither plaintiff in error testified on the trial. In discussing the testimony, in the course of the charge, the court several times referred to certain testimony on the part of the government and certain identifications of Shea and Taylor as "uncontradicted," "not directly contradicted," or "without any contradiction." These statements are criticized as violating the statute (Act March 16, 1878, c. 37, 20 Stat. 30 [3 U. S. Comp. Stat. 1916, § 1465]), which provides that the failure of a defendant in a criminal case to voluntarily testify "shall not create any presumption against him." If these comments were manifestly designed to direct the attention of the jury to defendants' failure to testify (or, perhaps, if they had such necessary effect), they would constitute reversible error. Wilson v. United States, 149 U. S. 60, 65, 13 Sup. Ct. 765, 37 L. Ed. 650, and following; McKnight v. United States (C. C. A. 6) 115 Fed. 972, 981–983, 54 C. C. A. 358. But unless they were intended as such comment, or would naturally be so understood, no error was committed. Jackson v. United States (C. C. A. 9) 102 Fed. 473, 487, 42 C. C. A. 452; Carlisle v. United States (C. C. A. 4) 194 Fed. 827, 114 C. C. A. 531;[2] Rose v. United States (C. C. A. 8) 227 Fed. 357, 363, 142 C. C. A. 53. To say the least, it is not so plain that, as to any of the subjects commented upon by the District Judge, no one but plaintiffs in error could, in the nature of things, have disputed them, if untrue, as to make it clear that the court's remarks were intended to be, or that they would naturally be understood as, an unfavorable comment on the failure of plaintiffs in error to testify. They thus did not constitute error.

[7, 8] 6. The trial court is alleged to have invaded the province of the jury, first, by instructing in effect that the so called "turf exchange" was a sham and a fraud, the requested instruction that such alleged fact must be proved beyond a reasonable doubt not being in terms

[2] In Jackson v. United States, supra, the prosecutor's inquiry, in the course of argument to the jury, "Why didn't the defendant put a sworn witness on the stand?" was held not necessarily to imply, and not ordinarily to be understood to mean, that comment was being made on the defendant's failure to testify. In Carlisle v. United States, supra, an argument by prosecuting counsel that the government had made out a prima facie case, which had not been contradicted, was held not reversible error. In Rose v. United States, supra, an argument that the evidence "is such that no sane man can arrive at any other conclusion" than that the defendant was guilty, followed by an inquiry, "Who is it that denies that Mr. Warren told the truth when he went on the witness stand?" was held to be no more than an argument that the evidence of the government is uncontradicted and unexplained. The statute, indeed, does not go so far as to forbid any nonprejudicial reference by the court to the defendant's failure to testify, as in Hanish v. United States (C. C. A. 7) 227 Fed. 584, 586, 142 C. C. A. 216, where it was held that an instruction that the fact that defendant had not testified is not to be considered against him was not prejudicial comment, and so was not error. A verdict cannot be impeached merely by showing that the jurors discussed in the jury room defendant's failure to testify. Stout v. United States (C. C. A. 8) 227 Fed. 799, 803, 804, 142 C. C. A. 323.

given; and, second, in that the charge as a whole was unduly argumentative in favor of the prosecution. The rule is well settled in the federal courts that the trial judge has the right to express his opinion upon the facts of the case and to advise the jury regarding their conclusions thereon, provided the jury is given to unequivocally understand that it is not bound by the judge's expressed opinion. Simmons v. United States, 142 U. S. 148, 155, 12 Sup. Ct. 171, 35 L. Ed. 968; Allis v. United States, 155 U. S. 117, 123, 15 Sup. Ct. 36, 39 L. Ed. 91; Young v. Corrigan (C. C. A. 6) 210 Fed. 442, 127 C. C. A. 174. This general rule is subject to the limitation that his comments upon the facts should be "judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment." Rudd v. United States (C. C. A. 8) 173 Fed. 912, 914, 97 C. C. A. 462; Sandals v. United States (C. C. A. 6) 213 Fed. 569, 576, 130 C. C. A. 149.

The important question is whether the court went beyond a proper exercise of his functions. In discussing the evidence of the existence of the alleged scheme to defraud the trial judge used the language which we quote in the margin.[3] Plaintiffs in error specially criticize the portions we have italicized. Obviously, the criticized extract must be considered in connection, not only with its context, but with the entire charge. The court had already told the jury that it was its business "to decide the facts, regardless of what it may assume to be the impressions of the judge." Several times afterwards the jury was expressly told that it was the sole judge of the facts, including these statements:

"If your opinion upon the questions upon which the court has ventured an opinion, namely, that a scheme to defraud was in operation, which was substantially of the character charged in the indictment, and that the mails were misused to promote such a scheme, without reference to the identity of the parties interested, differs from that entertained by the court, your duty is to adhere to your own opinion, and not allow that of the court to have any influence whatever upon your conclusion."

It is true that the court did express his opinion that no reasonable man could question that the so-called turf exchange was a pretense and a sham. This proposition, under the evidence in the case, was not reasonably open to question. There was uncontradicted and competent testimony which could reasonably mean only that neither the telephones nor telegraph instruments connected anywhere. The only reasonable inference from the testimony was that the charts, racing forms, etc., were shams. In view of the court's charge, taken as a whole, including the express instructions regarding the presump-

---

[3] "There is little chance for dispute here, in the court's opinion, but that the paraphernalia employed to impress Hoblitzel with the thought that he was in touch with a real turf exchange, so called, where real wagers on the outcome of real horse races might be laid, were but the furniture of this swindle. *The large amount of apparent money was but a simulation, the telegraph and telephone instruments were but shams, in that neither was a real instrument of communication; the announcements and posting of races were shams, the bookings were tricks. Any one who devised this scheme produced just such a fraudulent device as the statute condemns.*"

tion of innocence and the necessity of proving the various elements of the charge beyond reasonable doubt, we find no prejudicial error, if indeed, there is any, in the failure to give the request we have referred to. While the charge of the court was argumentative, in the sense that it contained a considerable discussion of the testimony, which was applied to the various elements of the offense charged, we are not impressed that it was unduly so, or that it went beyond the limitations upon the trial judge's right of comment as previously expressed in this paragraph.

[9-13] 7. The use of the mails. Hoblitzel testified that by way of substituting cash for his original $5,000 check he procured $2,500 in currency and paid it over to Taylor at the "exchange," and then drew his check on the Marion bank for the remaining $2,500. This check was forwarded through a Toledo bank, by mail, to the Marion bank, and the proceeds remitted through the mails by the latter bank to the Toledo bank. These uses of the mails were respectively the subjects of the charges in the two counts of the indictment. The refusal to direct verdict is assigned as error, on the ground that plaintiffs in error did not cause the mails to be so used. Error is also assigned upon the admission of testimony regarding the custom of banks to make such collections by mail, as well as upon the giving of an instruction to the effect that plaintiffs in error should be convicted, if they were confederated with Brown and Collins, or either of them, in a scheme to defraud substantially of the character charged, and if in the promotion of the scheme any one of the confederates was the conscious and inducing occasion of Hoblitzel's taking the check to the bank for the purpose of having it sent through the mails for collection, as the natural and probable consequence to be anticipated by the parties interested in the alleged scheme to defraud, and if the mails were thereafter used for transmitting the check to Marion, and as the natural and reasonable consequence, so to be anticipated by the parties interested in the fraudulent scheme, the proceeds of the check were sent by mail from Marion to Toledo.

We think the court did not err in either of the three respects complained of. There was testimony that at the "exchange," in answer to Hoblitzel's statement that he did not wish to go to Marion for the money, Taylor said to him, in the presence of Brown and Collins, that there was no need of his going down after it—"you can send a check just as quick as you can go yourself after it;" that Taylor then extended for a few days the time for getting the money, whereupon Collins, in the presence of Taylor and Brown (Shea was not present), asked Hoblitzel to go with him to the bank and send the check out through the bank; that Collins and Hoblitzel then went to the bank, where the collection was arranged for, Collins introducing Hoblitzel and indorsing the check; that a few days later, when the money was paid by the Toledo bank to Hoblitzel, in the company of Brown and Collins, it was taken by Hoblitzel to the "exchange" and there received from him by Taylor, in Shea's presence and with the latter's participation.

Notwithstanding the fraudulent scheme charged did not include the use of the mails, and such contemplated use is not necessary to a vio-

lation of section 215 of the Criminal Code (United States v.Young, 232 U. S. 155, 34 Sup. Ct. 303, 58 L. Ed. 548), we think the court rightly submitted to the jury the question whether the use of the mails in collecting the Hoblitzel check was not at least such a natural and probable consequence of the execution of the original scheme (taking into account the original use of the check for betting purposes) as that all the participants would naturally have foreseen the likelihood that such resort to the mails would be had whenever it appeared expedient so to do in aid of the common purpose. Hitchman Coal & Coke Co. v. Mitchell, supra, 245 U. S. 229, 249, 38 Sup. Ct. 65, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461.

We see no merit in the suggestion that the evidence showed "at most, a mere suggestion that Hoblitzel could use the mails"; nor do we think the effect of the portion of the charge criticized amounted to an instruction to "find the defendants guilty, even though the use of the mails was a fresh and independent product of the mind of one of their confederates."

The proof of the custom of banks to collect checks by mail was clearly competent. The existence of such custom would be presumed to be within the knowledge of people of ordinary business experience (Spear v. United States [C. C. A. 8] 246 Fed. 250, 158 C. C. A. 410); and the jury might well think plaintiffs in error more than ordinarily waywise.

We think, moreover, that the testimony would warrant a conclusion that plaintiffs in error consciously participated in bringing about the use of the mails for the purposes stated. Such a bringing about of the use of the mails would be a "causing" of such use, even though neither of them personally made the arrangements with the bank. United States v. Kenofskey, 243 U. S. 440, 37 Sup. Ct. 438, 61 L. Ed. 836; Goldman v. United States (C. C. A. 6) 220 Fed. 57, 61–63, 135 C. C. A. 625.

We find it unnecessary to consider the question (not presented in brief of plaintiffs in error nor clearly raised on the record) whether the mere fact of the formation of the fraudulent scheme charged would make plaintiffs in error liable for the act of either of their associates (not directly or indirectly participated in by plaintiffs in error) in causing the mails to be used in collecting the check, without reference to whether such use was such a probable, incidental, or reasonable consequence of the execution of the alleged fraudulent scheme as that it should naturally have been foreseen by all the parties thereto as likely to happen.

[14] 8. The subject-matter of the requested instructions whose refusal is complained of in the twelfth paragraph of brief of plaintiffs in error was sufficiently covered by the charge as given.

We have discussed the prominent assignments argued by plaintiffs in error, and have considered all so argued. We find no prejudicial error, and the judgment of the district court is accordingly affirmed.