### J. C. SHAFFER & CO. v. WEST TENNESSEE GRAIN CO.

(Circuit Court of Appeals, Sixth Circuit. February 16, 1921.)

No. 3484.

1. **Sales ⬅89—Extension after expiration of time for delivery not without consideration.**
A contract for sale of grain to be delivered during a stated month, which provided: "If this contract, or any part of it, expires without being filled, take up disposition of balance with buyer by wire, phone, or letter. Buyer reserves right to accept or reject cars shipped after contract expires"— gave the buyer the right at his election to waive a breach by failure to deliver within the month, and an agreement made after expiration of the month extended the time for deliveries *held* not without consideration.

2. **Sales ⬅182 (1)—Whether buyer first breached contract held for jury.**
Where, in an action by the purchaser for breach of a contract for the sale and delivery of grain, defendant pleaded as an excuse for failure to deliver or tender delivery that plaintiff had repudiated the contract, such defense raised an issue of fact for the jury.

3. **Appeal and error ⬅1066—Trial ⬅253 (6)—Instruction as to weight of evidence erroneous and prejudicial, as ignoring other evidence.**
An additional instruction, given to a jury which was in disagreement, stating that there were two disinterested witnesses whose testimony tended to support the contention of defendant, and that if the jury believed them they would be warranted in finding the weight of evidence to be in favor of defendant, which was immediately followed by a verdict for defendant, *held* erroneous and prejudicial, as in effect requiring the jury to ignore all other evidence on the issue.

In Error to the District Court of the United States for the Eastern Division of the Western District of Tennessee; John E. McCall, Judge.

Action at law by J. C. Shaffer & Co. against the West Tennessee Grain Company. Judgment for defendant, and plaintiff brings error. Reversed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. G. Bond, of Jackson, Tenn., and Chas. V. Clark, of Chicago, Ill. (Bond & Bond, of Jackson, Tenn., and Jeffery, Campbell & Clark, of Chicago, Ill., on the brief), for plaintiff in error.

Geo. T. McCall, of Huntingdon, Tenn. (George T. McCall, of Huntingdon, Tenn., T. O. Morris, of Union City, Tenn., and W. S. Draper, of Dyersburg, Tenn., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The action in the District Court was brought by the plaintiff in error, J. C. Shaffer & Co., to recover damages for breach of two separate contracts for the sale and delivery of 10,000 bushels and 5,000 bushels, respectively, of No. 3 corn at $1.30 per bushel, to the plaintiff at Chicago, in October 1917. The defendant, for answer, among other things, averred as part of its fourth defense that on the 7th day of November, 1917, the plaintiff and defendant entered into a further agreement by the terms of which the time for delivery of this corn was extended to include November, 1917. Delivery to be made at Memphis, Tenn., instead of Chicago, Ill. The plaintiff by reply denied that it, or any one authorized to act in its behalf, made or entered into any agreement to alter or change the original contract, and also averred that there was no consideration to support such a contract.

There were other issues joined by the pleading, but the court disposed of these issues and submitted to the jury the sole question of whether Mr. Hirschy, representing the plaintiff, did or did not on the 7th day of November, 1917, make or enter into any contract or agreement with the defendant extending the time of shipment to include the month of November, 1917. Upon this issue the jury found for the defendant. Motion for a new trial was overruled, and judgment entered upon the verdict.

It is insisted upon the part of the plaintiff in error that the court erred in submitting to the jury the question of the making of this supplemental agreement extending the time of delivery, for the reason that at the time this agreement was claimed to have been made the defendant had already breached its contracts of August 28, 1917, and its liability to this plaintiff for damages had already accrued; that for this reason, if any such agreement was made, it must be based on a new consideration; that there is no pretense or claim on the part of the defendant, nor is it shown by any evidence, that any consideration whatever for this new contract passed from defendant to plaintiff, nor was any consideration agreed to be paid to the plaintiff by the defendant; that at most it was but an attempt at an accord and satisfaction, and, never having been executed in whole or in part, and no performance by the defendant ever having been made or tendered, it is but an accord without satisfaction, and is no defense to plaintiff's action on the original contract.

[1] It is provided in each of these contracts that:

"If this contract, or any part of it, expires without being filled, take up disposition of balance with buyer by wire, phone, or letter. Buyer reserves the right to accept or reject cars shipped after contract expires."

It would appear from this provision that it was clearly within the contemplation of the parties that the buyer might elect to waive the breach for failure to deliver in October and accept later deliveries. It further appears from the telegrams in evidence that under this provision in the contract the buyer by telegram did offer, in effect, to waive the breach and accept delivery up to and including the 8th of November. This proposition was not accepted by the seller, but interchange of telegrams in reference thereto continued up until late on the 6th of November, when Mr. Hirschy, representing the plaintiff, left Chicago and reached the defendant's place of business at Obion early the next morning, so that it cannot be said that at the time he reached Obion and conferred with the president of the defendant company and Mr. Fox, who it appears is jointly interested with the defendant in these contracts, that the plaintiff had definitely elected, under this provision of the contract giving him the right to elect, whether it would or would not waive the breach and receive later shipments. For this reason we are of the opinion that, if this contract was made as claimed by the defendant, it amounted merely to an extension of time for delivery under the original contract, and that the promise to deliver in November was a sufficient consideration for the agreement to accept deliveries in that month.

There is also evidence in this record tending to show that there was some difficulty in obtaining this grade of corn upon the open market; that the price of corn was rapidly advancing; that in all probability the price would be much higher later in November than the market price on the last day of October, or in the early days of November, when these negotiations were pending. From this evidence the jury might reasonably conclude that it would be more to the advantage of plaintiff to have this corn delivered to it in November than to receive payment of damages based upon the difference in the contract price and the market price at the time the contract was breached; or the jury might have reached the conclusion from this evidence that the defendant would suffer greater loss by delivering in November than by payment of damages for the breach of this contract, which additional loss it was willing to assume and pay in recognition and discharge of its obligation to furnish this amount of corn to the plaintiff under the further terms of this contract. United Steel Co. v. Casey (C. C. A.) 262 Fed. 889–892.

[2] In order to establish this contract, however, it would not be sufficient to show that during the course of these negotiations between Mr. Hirschy, representing the plaintiff, and Mr. Parks, representing the defendant, they tentatively agreed upon an extension, which tentative agreement, in the same conference, or in an adjourned session of that conference, was finally abandoned. On the contrary, the burden was upon the defendant to establish by the preponderance of the evidence that the minds of the parties met on each material provision of this contract, and particularly as to time and place of delivery, and that each party thereto had fully and finally consented to all its terms without intention, purpose, or necessity of further negotiations and without the intention and purpose that these terms discussed by them

at this meeting should be reduced to writing and signed by the respective parties thereto before it should become binding upon either. Nor does it necessarily follow that the plaintiff should not have recovered in this action, even though the jury found that this contract of extension was made, notwithstanding the averment in the declaration that the corn was to be shipped by defendant to plaintiff in the month of October, 1917, and damages are asked for the failure of the defendant to deliver in that month, if the evidence further shows that no delivery was made or tendered in November. Any agreement for the extension of time is merely supplemental to the original contract, and must be construed in connection therewith, the same as if it had been originally written into that contract.

If this defendant understood that a final agreement had been reached extending the time for delivery to include the month of November, and it relied upon that contract as a modification of the original contract, then it became the duty of the defendant to ship the corn within the month of November. This it did not do, nor is there any evidence that it tendered delivery, although there is evidence that it then had the corn ready for shipment. It is averred in the answer that—

"within a few hours after this contract for extension of time for delivery was made, the plaintiff repudiated the same, and notified defendant that it would go upon the market in Chicago and buy corn to fill the contract; that defendant immediately advised plaintiff that it was ready, able, and willing to abide by the contract which they had just made to ship this corn to Memphis by November 30, 1917; and that it would not in any way be responsible for the purchase of this corn upon the open market, and thereupon negotiations came to an end."

It appears from the evidence that negotiations came to an end when Mr. Parks, representing the defendant, signed a written memorandum of agreement, prepared in part by Mr. Buxton and in part by Mr. Morris, attorney for the defendant, and tendered the same to Mr. Hirschy for his signature, at the depot, at the time Mr. Hirschy was leaving Obion. It does not appear that anything further was said or done by the parties at that time, nor did the defendant at any time thereafter perform or tender performance. The telegram of November 6th, in which the defendant refused to allow purchase on open market to be charged to its account, cannot be taken into consideration as affecting the question of delivery under the alleged contract of November 7th, nor can the evidence in reference to the two cars, the bills of lading of which were changed prior to November 7th, from plaintiff to some other purchaser, or the reason for such change be offered as an excuse for nonperformance on the part of defendant of the alleged supplemental contract made after that time. The question, therefore, as to whether the conduct of the plaintiff excused defendant from making the delivery in accordance with the alleged supplemental contract was at least a question for the jury, and should have been submitted to the jury in connection with the question as to whether such contract had in fact been made.

[3] The fourth assignment of error raises by far the most important question in this case. It appears from the record that:

"The jury, having retired, was called into court on the late afternoon of the 4th and reported that they were unable to agree. They were thereupon respited until the following morning, the 5th, when they resumed the consideration of the case, when about 10:30 o'clock they were called into court and asked by the judge whether they had agreed upon their verdict they stated they had not. The court then asked them whether they disagreed as to anything in his charge. They announced that they did not. He then asked did they disagree as to any evidence, or what any witness stated, and they stated they did not. He then asked did they disagree as to what weight should be given to the witnesses' evidence, and one or two of the jurors announced that 'you might consider that they did.' Thereupon the court charged the jury as follows:

"It may be that the jury did not fully understand the court's charge relating to weighing the evidence, and, since it is desirable that you arrive at a verdict, I take the liberty to repeat in substance what I said to you on that subject. You are instructed that defendant's liability must turn on whether it sustained by the greater weight of the evidence its special plea in which it is averred that Mr. Hirschy, on November 7th, modified the terms and extended the time as to when and where the corn might be delivered.

"There were five witnesses testified in support of the defendants' plea and one against it. Ordinarily, the greater weight of the evidence is not necessarily determined by the greater number of witnesses. But where, as in this case, the witnesses on both sides were unimpeached, and where all of them appear to have had an equal opportunity to know the facts about which they testified, and all appear to be men of equal intelligence, and where only two of such witnesses appear to have no material interest in the result of the case, and the testimony of these two tends to support the contention of the defendants, if you believe the evidence of such two witnesses you would be warranted in finding that the greater weight of the evidence is in favor of defendants' special plea, and such a finding would justify a verdict for the defendant."

It later appears in the record that the jury then retired and in a very short time returned into court and announced that "we find the issues in favor of the defendant." It is clear, therefore, that the verdict of the jury was a quick response to this additional charge, and that, if erroneous, it was beyond question prejudicial to the plaintiff. In giving this charge the court made a mistake of fact, in that the testimony of only one disinterested witness, instead of two, as stated by the court, tended to support the contention of the defendants. This fact as to but one disinterested witness had been properly stated by the court in its original charge, and the jury's attention called to that witness by name. The court in giving this charge also overlooked the fact that Mr. Buxton, a broker, had testified on behalf of the plaintiff. It does not appear that he was an interested witness, in that he had any financial interest in the litigation. He was, perhaps, interested in the proper performance of the contract he had negotiated between the parties; but he could not be said to have a material interest in the controversy. Whether his conduct and his testimony evidenced any friendship or prejudice for or against either of the litigants was a question for the jury to determine. That is also true in reference to the testimony of Mr. Fleming, who had testified on behalf of the defendant, and who likewise had no material interest in the result of the trial. While Mr. Buxton was not present at the time it is now claimed this agreement to extend the time of delivery was made, yet what happened on the succeeding day is of material importance in determining the contro-

verted question in this case. If Mr. Buxton's testimony in reference to what occurred at the meeting between these parties on the night of November 8th and the morning of November 9th tends in any way to corroborate the testimony of Mr. Hirschy, the plaintiff was entitled to the full benefit of that testimony.

It is the claim of the defendant that the matter was fully adjusted, settled, and determined on the 7th of November at the first meeting between Mr. Hirschy, Mr. Parks and Mr. Fox. As testing the credibility of the evidence tending to support that contention, it was proper for the jury to consider the fact that Mr. Buxton came from Memphis to Obion on the succeeding day, for the evident purpose of assisting in the adjustment of the controversy; that in pursuance of this purpose the matter was discussed in the office of the defendant company at Obion from about 9 o'clock that evening until 2 o'clock the next morning; that during the course of these negotiations Mr. Buxton drew up a memorandum of agreement between the parties, which Mr. Parks refused to sign, and thereupon called his attorney over the telephone and read him what Mr. Buxton had written; that the next day Mr. Morris, attorney for the defendant, came to Obion and wrote an additional provision to the memorandum prepared by Mr. Buxton; that thereupon Mr. Parks signed the memorandum of agreement, and in company with Mr. Morris, attorney for the defendant, went to the train to see Mr. Hirschy, but that Mr. Hirschy refused to sign the memorandum of agreement containing the additional provision placed there by Mr. Morris, and refused to enter into any further negotiations in reference thereto. Certainly all these facts tended strongly to corroborate the testimony of Mr. Hirschy that no final or definite agreement was made on the 7th day of November. Mr. Hirschy is further corroborated by the testimony of Mr. Parks that after he had talked to his attorney over the telephone, and read the statement prepared by Mr. Buxton to him, he came back and told Hirschy that—

"Mr. Morris would be in Obion the next day at noon; that I wouldn't sign that night, but if he would hold it open until the next day Morris said he would be down, and I said, 'I want to talk the matter over with him and with you, and, if you hold it over until then, we can probably get it closed up,' and he said he would do so."

If, therefore, any of the facts or circumstances in evidence, or if the testimony of any of defendants' witnesses tended in any way to corroborate the testimony of Mr. Hirschy, it was error for the court to instruct, in effect, that the jury should ignore all of these facts and circumstances and look only to the oral testimony of disinterested witnesses, whose testimony tended to corroborate the testimony of defendants' witnesses.

The credibility of witnesses is solely a question for the jury. The number of witnesses that testify upon one side or the other is not the test as to the weight of the evidence. If that were so, a reviewing court might readily determine whether or not a verdict is against the manifest weight of the evidence by merely counting the witnesses that testified on opposite sides of the case. The important thing is whether

or not the jury believes the witnesses. Nor is the credibility of a witness to be determined solely from his interest in the case. That fact the jury, of course, has a right to consider in determining what weight it will give to his testimony; but it is not conclusive. The jury should also take into consideration the demeanor of the witness upon the stand; his willingness or unwillingness to testify; whether his testimony as a whole is consistent or conflicting in some of its parts; whether or not there is anything in his manner or method of testifying that would indicate such prejudice or bias as might induce him to color his testimony or exaggerate the facts in favor of or against either party to the suit; and every other attendant fact and circumstance upon which the jury might reasonably base its conclusion as to the credibility of his testimony.

The rule is well settled in the federal courts that a trial judge has a right to express his opinion upon the facts of a case and to advise the jury regarding their conclusions thereon, provided the jury is given to understand, unequivocally, that it is not bound by the judge's expressed opinion. Simmons v. United States, 142 U. S. 148–155, 12 Sup. Ct. 171, 35 L. Ed. 968; Allis v. United States, 155 U. S. 117–123, 15 Sup. Ct. 36, 39 L. Ed. 91; Young v. Corrigan, 210 Fed. 442, 127 C. C. A. 174. This general rule, however, is subject to the limitation that the trial court's comments upon the facts should be "judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment." Shea v. United States, 251 Fed. 440–446, 163 C. C. A. 458, 464; Rudd v. United States, 173 Fed. 912–914, 97 C. C. A. 462; Sandals v. United States, 213 Fed. 569–576, 130 C. C. A. 149.

While this additional charge was "judicial and dispassionate," nevertheless it was not so carefully guarded as to leave the jury free to exercise an independent judgment. Nor was the jury given to understand, unequivocally, that it was not bound by the court's opinion. The effect of this charge was to advise the jury to disregard proven facts and circumstances that might be just as potent in the corroboration of an interested witness as oral testimony given by a disinterested witness, and to disregard all the indicia by which a juror is enabled to determine the credibility of a witness, whether interested or not, and return a verdict based entirely upon the testimony of disinterested witnesses. The court might just as well have peremptorily directed a verdict for the defendant, for the plaintiff had not offered, and was not in position to offer any disinterested witness to establish its contention as to what occurred between Mr. Hirschy, Mr. Parks, and Mr. Fox at their first meeting on November 7th.

It is said, however, that there was no exception taken to this charge until after the jury had retired. That statement does appear in the record immediately after this additional charge, but shortly following that is the further statement that "the plaintiff then excepted to the court giving such charge, and also specifically to that part of the charge as follows," quoting the charge as above given. Then following the quotation of the portion of the charge excepted to is the further statement:

"The jury then retired and in a very short time returned into court and announced: 'We find the issues in favor of the defendant.'"

It is impossible to reconcile this conflict in the record. The trial judge was dead at the time this bill of exceptions was prepared and submitted to and signed by another judge. The judge signing this bill of exceptions had no personal knowledge with reference to what had transpired at the trial. Counsel for plaintiff in error insisted that the exceptions were taken before the jury retired. Counsel for defendant had no such recollection. The judge very properly left the record just as it was handed to him for his approval and signature. It is clear that this additional charge of the court is not only erroneous, but also that the jury returned its verdict in accordance therewith, and not upon consideration of all the evidence. This court is therefore inclined to accept that view of the record that will enable it to correct this error, and secure for the plaintiff a trial of these issues of fact by a jury, and not by the court, unless it should specifically waive that constitutional right.

It is further insisted upon the part of the plaintiff in error that the court erred to its prejudice in refusing to give its several special requests in charge to the jury, and particularly the fourth, fifth, fifteenth, and sixteenth. There was no error in the refusal to give these requests. What has been said earlier in this opinion in reference to the validity of the alleged contract extending the time of delivery applies to the fourth and fifth requests. The fifteenth and sixteenth requests are substantially covered by the charge of the court.

For the reasons above stated, the judgment of the District Court is reversed, and cause remanded for new trial in accordance with this opinion.