## SIDEBOTHAM et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. September 10, 1918. Rehearing Denied Oct. 14, 1918.)

No. 3098.

1. INDICTMENT AND INFORMATION ⊕⇒129(1)—FRAUDULENT USE OF MAILS—JOINDER OF CHARGES.

A charge, under Penal Code, § 215 (Comp. St. 1916, § 10385), for using the mails for a scheme to defraud, and a charge, under section 37 (section 10201), for a conspiracy to commit such offense, may be joined, under Rev. St. § 1024 (Comp. St. 1916, § 1690), relating to several charges for same transaction or for two or more transactions connected together.

2. CRIMINAL LAW ⊕⇒1149—DISCRETION OF TRIAL COURT—ELECTION—REVIEW.

The disposition of an objection that defendants were or had been embarrassed in their defenses by a denial of their motion to require prosecution to elect would be within the discretion of the trial court, and reviewable only if that discretion was abused.

3. CRIMINAL LAW ⊕⇒1167(2)—REFUSAL TO REQUIRE ELECTION—HARMLESS ERROR.

In prosecution, under Penal Code, § 215 (Comp. St. 1916, § 10385), for using mails to defraud, and for a conspiracy to commit such offense, refusal to require prosecution to elect was not prejudicial, where defendant was convicted only of the first offense and sentenced for 13 months and to pay costs, where the statute authorized a fine of not more than $1,000, or an imprisonment of not more than five years, or both.

4. POST OFFICE ⊕⇒49—SCHEME—EVIDENCE.

In a prosecution upon counts under Penal Code, § 215 (Comp. St. 1916, § 10385), for using the mails for a scheme to defraud, evidence *held* to show that an envelope, circular, and application for stock in a corporation were placed in the post office under the direction and with the knowledge of the defendants.

5. CRIMINAL LAW ⊕⇒787(1)—INSTRUCTIONS—REFERENCE OR FAILURE TO TESTIFY.

In a prosecution under Penal Code, § 215 (Comp. St. 1916, § 10385), for using mails to defraud, instructions defining intent, and stating that no one had denied a witness' testimony, were not objectionable as referring to fact that defendants did not take stand and testify in their own behalf.

6. CRIMINAL LAW ⊕⇒1172(1)—COMMENT ON DEFENDANT'S FAILURE TO TESTIFY—PREJUDICE—EVIDENCE.

In a prosecution under Penal Code, § 215 (Comp. St. 1916, § 10385), for using the mails to defraud, where court is alleged to have commented on defendant's failure to testify, evidence *held* to show that the verdict was based upon the direct and positive testimony of witnesses and documents and the legitimate inferences, and not from any prejudice because defendants did not testify in their own behalf.

In Error to the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

R. R. Sidebotham and J. G. G. Wilmot were convicted of using the post office for a scheme to defraud and they bring error. Affirmed.

Wellington D. Rankin, of Helena, Mont., for plaintiffs in error.

B. K. Wheeler, U. S. Atty., James H. Baldwin, Asst. U. S. Atty., both of Butte, Mont., and Homer G. Murphy, Asst. U. S. Atty., of Helena, Mont.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
253 F.—27

MORROW, Circuit Judge. The indictment in the court below contained 11 counts. Ten counts, numbered 1 to 10, inclusive, charged the plaintiffs in error and 13 other defendants with the offense of devising a scheme and artifice to defraud certain persons by false and fraudulent representations and pretenses in the sale of certain shares of stock of the Northwestern Trustee Company, a corporation organized under the laws of the state of Montana; that having devised the scheme and artifice to defraud, and for the purpose of carrying the scheme and artifice into execution, the defendants deposited in a post office of the United States certain letters concerning the stock of the Northwestern Trustee Company, the letters being addressed to the persons intended to be defrauded by the scheme and artifice, in violation of section 215 of the Penal Code of the United States. Act March 4, 1909, c. 321, 35 Stat. 1130 (Comp. St. 1916, § 10385). The eleventh count charged the defendants with the offense of having conspired together in violation of section 37 of the Penal Code (Comp. St. 1916, § 10201) to commit the offenses described in the other counts.

[1] It is assigned as error that the court erred in denying the motion of the plaintiffs in error requiring the United States attorney to elect between the eleventh count and the other counts of the indictment on the ground of duplicity. The trial of the case was commenced on January 10, 1917, and the verdict of the jury was rendered on January 27, 1917. This motion was made on January 24, 1917, and after the case had been on trial on all the counts for two weeks. On the same day the court directed the jury to return a verdict for the defendants on counts numbered 1, 2, 3, and 4, and later the court instructed the jury to acquit the defendants on counts numbered 5 and 6. The case was finally submitted to the jury on counts numbered 6, 7, 8, 9, and 11. No objection had been interposed on behalf of the defendants to the introduction of testimony in support of all the counts of the indictment, and no objection was made at the beginning of the trial, or at any time, that the defendants would be or were embarrassed in their defense by this procedure. The objection now interposed is that the indictment is duplicitous, not that the plaintiffs in error were embarrassed in their defense.

The scheme and device to defraud as charged in the indictment, and the conspiracy to commit that offense, grew out of the same transaction, and were so connected together that the evidence to sustain one charge was evidence in support of the other charges, except to establish the conspiracy count, it was necessary to prove the conspiracy. Such charges may be joined under the provisions of section No. 1024 of the Revised Statute (Comp. St. 1916, § 1690), which provides:

"When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

The case of Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208, is cited by the plaintiffs in error in support of their ob-

jection that the conspiracy charged cannot be joined in the same indictment with the charge to commit the offense which is the object of the conspiracy. The Supreme Court did not so hold. In that case the indictment contained four counts:

"In the first count it was charged that the defendant, on the 25th of December, 1891, at the Choctaw Nation, in the Indian country, within the above district, did, with an ax, feloniously, willfully, and of his malice aforethought, 'strike, cut, penetrate, and wound' upon the head one Samuel E. Vandiveer, a white man, and not an Indian, inflicting thereby a mortal wound, * * * the same offense, and differed from the first only in using the words 'beat, bruise,' in place of 'cut, penetrate.' In the third count the defendant was charged, in the words of the first count, with having, in the same manner, on the 25th of December, 1891, feloniously, willfully, and of his malice aforethought, at the Choctaw Nation, in the Indian country, within the same district, killed and murdered one William D. Bolding, a white man, and not an Indian. The fourth count differed from the third only as the second count differed from the first."

[2, 3] The defendant moved to quash the indictment upon various grounds, one of which was that it charged two distinct felonies. The motion was overruled. Before the case was opened to the jury for the government, the defendant moved that the district attorney be required to elect on which count of the indictment he would claim a conviction. That motion having been overruled, he was required to go to trial upon all of the counts. Upon the conclusion of the evidence, the defendant renewed the motion that the government be required to elect upon which count of the indictment it would prosecute him. This motion was overruled. The jury found the defendant guilty upon the first and third count of the indictment. Upon writ of error to the Supreme Court of the United States, the judgment of the trial court was affirmed. In the opinion of the court, after referring to the rule established by authorities:

"That the court in its discretion may compel an election, when it appears from the indictment or from the evidence that the prisoner may be embarrassed in his defense if that course be not pursued"

—the court says:

"It is therefore clear that the accused was not confounded in his defense by the union of the two offenses of murder in the same indictment, and that his substantial rights were not prejudiced by the refusal of the court to compel the district attorney to elect upon which of the two charges he would proceed."

The plaintiffs in error in the present case did not raise the objection that they were or had been embarrassed in their defense, and, had that objection been made, the disposition of the objection would have been in the discretion of the court and reviewable only if that discretion had been abused; and as it does not appear that the court abused its discretion in denying the motion, there is nothing for us to review; but, further than that, it does not appear that the plaintiffs in error were in any way prejudiced by the procedure. The jury acquitted the plaintiffs in error upon the conspiracy charge, and found them guilty only on the sixth count, charging them with the scheme to defraud, and depositing a letter in the post office to carry out the scheme. The judgment of the court was that the plaintiffs in error should each be im-

prisoned for the period of 13 months and pay the costs, amounting to $4,120. The punishment prescribed for the commission of the offense set forth in the sixth count is by a fine not more than $1,000, or imprisonment not more than 5 years, or both. The objection cannot be sustained.

[4] It is next assigned as error that the evidence was insufficient to support a conviction under the sixth count, and that the motion for a directed verdict in favor of the plaintiffs in error should have been sustained. The sixth count charged that the defendants, to carry out their scheme to defraud, placed and deposited in a certain post office in the United States, to be sent and delivered by the post office establishment of the United States, a certain envelope, upon which the postage was fully prepaid; that the envelope was addressed to the person therein named and contained a circular letter and blank application for stock. The text of the letter and blank application are set out, and it is charged that the letter was signed, "Sidebotham & Wilmot, Sole Fiscal Agents, by J. Hosking," that the letter related to the stock of the Northwestern Trustee Company, and that the letter and blank application were a part of the scheme to defraud.

The plaintiffs in error contend that the evidence does not show that Sidebotham and Wilmot actually deposited in the mails the circular letter and blank application referred to, or that the same was deposited by their agent under their direction, with their knowledge. The envelope, circular letter, and blank application were introduced in evidence, and marked, respectively, Exhibits 97, 98, and 99. Jessie Hosking testified that she was a stenographer; that she was employed by Sidebotham and Wilmot in the capacity of stenographer and bookkeeper; that while she was in the employ of Sidebotham & Wilmot in the office of the Northwestern Trustee Company, she had occasion to send out or assist in sending out circular letters, and when circular letters were sent out they were mailed to the stockholders and subscribers; that she identified her signature at the bottom of the letter Exhibit 98 and that she had seen circulars or letters similar to that in the office signed "Sidebotham & Wilmot, by J. Hosking" which were mailed out to stockholders and subscribers; that she was J. Hosking; that Exhibit 97 was the Northwestern Trustee Company's envelope. She recognized No. 99 (blank application for stock). She had seen that in the office of the Northwestern Trustee Company; that it accompanied the letter she had identified as No. 98, and was sent out through the United States mails with it. She didn't know whether it was gotten out by the Northwestern Trustee Company or by Sidebotham and Wilmot. It was sent out by Sidebotham and Wilmot. She was asked, "Who was it that actually sent Exhibits No. 98 and 99—mailed them?" She answered, "Sidebotham and Wilmot." She was asked, "Did you do it for them?" and she answered, "Yes, I did it; it was my instructions to send it out for them." She was asked how they were sent out, and she said, "Through the mail." She was asked how they were mailed out, and she answered, "As far as I can remember, they were dropped in the United States post office." This testimony and the legitimate inferences to be drawn therefrom as to acts of an authorized agent are, we think, suffi-

cient to establish the fact that the envelope, circular, and application for stock were placed in the post office under the direction of the plaintiffs in error and with their knowledge.

[5, 6] The objection that the court, in its instructions to the jury, referred to the fact that the defendants did not take the stand and testify in their own behalf, has no other basis than the court's definition of the "element of intent" in its instructions to the jury. The court instructed the jury upon this question as follows:

"What is intent? Intent is the quality of mind with which an act is done. It is the mental process, the design, the aim, the purpose or object of the act. How is this intent arrived at? Being a mental process, you cannot penetrate to the mind of a man, if he will not tell you, unless you can infer from his conduct; so that the law is: A man's intent is manifested and shown by all the circumstances connected with the offense."

The court also instructed the jury as follows:

"In September, 1914, Wiggins testified that Wilmot stopped him on the road, and sold him 10 shares at $30, and told him the company had been paying dividends the past year at the rate of 8 per cent., and he would guarantee that this year, when Wiggins did buy, that it would be 30 per cent. or better. No one has denied Wiggins' testimony, and there it stands for your consideration."

The instruction did not in any ordinary or legal sense call the attention of the jury to the fact that the plaintiffs in error did not testify in their own behalf, and we do not think the jury so understood it. None of the defendants testified in their own behalf.

The indictment charged 15 defendants with the offenses described in the indictment. The indictment contained 11 counts. The case was submitted to the jury against 7 defendants on 5 counts in the indictment. Had the court's instructions referred to been understood as calling the attention of the jury to the fact that the defendants did not testify in their own behalf, and had the instructions, as thus understood, prejudiced their defense in this respect, no such discriminating verdict, upon the evidence before the jury, would have been rendered against the plaintiffs in error, while acquitting the other 5. In other words, the evidence in the case clearly indicates that the verdict was based upon the direct and positive testimony of witnesses and documents and the legitimate inferences to be drawn therefrom, and not from any prejudice because the plaintiffs in error did not testify in their own behalf.

Finding no error in the record, the judgment of the District Court is affirmed.