## ROBILIO et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 29, 1923.)

No. 3792.

1. **Criminal law ⚖➝15—Volstead Act did not prevent prosecution for prior offense under Reed Amendment.**

The Volstead Act, which did not take effect until January 16, 1920, and which expressly provided by section 35 that it should not relieve any person from liability incurred under existing laws, did not prevent a prosecution for a conspiracy to violate Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), which had been consummated before the Volstead Act took effect.

2. **Conspiracy ⚖➝28—Joint attempt at violating Reed Amendment may be indicted as a conspiracy.**

An indictment, under Criminal Code, § 37 (Comp. St. § 10201), charging conspiracy to violate Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), was not vulnerable to attack on the ground that the amendment by its terms created an offense in which the co-operation of the various parties was necessary, and that the indictment charged no acts other than such as were embraced in an attempt to violate that amendment.

3. **Conspiracy ⚖➝43(6)—Indictment held sufficiently definite.**

An indictment charging a conspiracy to violate Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), by conspiring to purchase and cause intoxicating liquors to be transported in interstate commerce into the state of Tennessee in a water conveyance upon the Mississippi river, not for permitted purposes, and in violation of the laws of the state of Tennessee, was sufficiently definite and certain to inform defendants of the charge against them and to insure protection against double jeopardy.

4. **Indictment and information ⚖➝121(1)—Bill of particulars will furnish specific date necessary to support plea of former jeopardy.**

Where the indictment for conspiracy alleged the date of the offense as the day of a specified month, and a more definite statement of the date of the offense was necessary to inform one defendant whether he could successfully plead former jeopardy, a bill of particulars would have furnished the desired information.

5. **Criminal law ⚖➝295—Former conviction for substantive offense held not for object of conspiracy.**

Where an indictment charged a conspiracy in April, 1919, to transport whisky into the state by a water conveyance, in violation of Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), evidence that one defendant had been convicted of violating that amendment by transporting whisky elsewhere in January, 1919, does not show the offense for which he was convicted was the same offense designated by the indictment as the object of the conspiracy.

6. **Criminal law ⚖➝1043(2)—Overruling objection to testimony on ground not stated is not reviewable as matter of right.**

The overruling of an objection to testimony, the ground for which is not stated, is not reviewable as of right.

---

⚖➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Criminal law ⟾1036(1), 1054(1), 1056(2)—Authority to review without ex-ceptions not extended by statute.**

The authority of federal courts of review to notice error in the trial of a criminal case, though the question was not properly raised at the trial by exception, objection, and exception in order to prevent miscarriage of justice, was not extended by Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), requiring the court to give judgment after an examination of the entire record without regard to technical errors, the principal object of which was to prevent reversal for mere technical errors, and which did not dispense with the necessity of objection or exception at the trial, both as respects the admission and rejection of testimony and the charge to the jury.

**8. Criminal law ⟾1170½(1)—Evidence of government witness' reputation for veracity held not prejudicial.**

Evidence in support of the reputation of a witness of the government for truth and veracity, which related to his reputation in his home town before he came to the city, and several years prior to his arrest, was of such little probative force that its admission does not require reversal of the conviction.

**9. Criminal law ⟾386—Identity of other party to telephone conversation must be established by evidence other than declarations.**

To render competent the testimony of telephone conversations, there must be some evidence tending to establish the identity of the person with whom the conversation is alleged to have been had, and a mere statement of identity by the party calling is not sufficient proof thereof, though attendant circumstances may establish such identity without recognition of the voice.

**10. Criminal law ⟾386—Evidence held sufficient to identify defendant as other party to telephone conversation.**

Evidence of circumstances attending telephone conversations and of other transactions between the parties *held* sufficient to identify defendant as the other party to a conversation testified to by a witness for the government, though the witness could not identify defendant's voice.

**11. Conspiracy ⟾45—Evidence of telephone calls held relevant in prosecution for transportation.**

In a prosecution for conspiracy to violate Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), by transporting liquor from a town in Missouri to a city in Tennessee, evidence of telephone calls to or from the defendants, from saloons in the Missouri town to the city in Tennessee, was relevant.

**12. Criminal law ⟾434—Records of telephone company made in due course of business held admissible.**

Where the local manager of a telephone company testified that the records of long distance calls were correct and were made under his supervision, such records, being made in due course of the daily business in a quasi public office, were not rendered incompetent because they were actually filled out by the operator and not by the witness.

**13. Criminal law ⟾403—Copies of part of records of telephone calls held admissible.**

Copies made by a witness of records of long distance calls were not incompetent because the witness did not copy that part of the record which showed whether the conversation was actually had.

**14. Criminal law ⟾1170½(1)—Exclusion of evidence of witness' attempt to secure money for dismissing prosecution held not prejudicial.**

Where the trial court excluded evidence on behalf of defendant as to an attempt by the prosecuting witness to procure money to induce the dismissal of the prosecution, on the sole ground that no question relating to that subject had been propounded to the government wit-

---

⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ness, and counsel for defendant did not ask to have that witness recalled to have the question propounded to him, the inference may be drawn that counsel did not regard the matter as important, and the exclusion of the evidence does not require a reversal.

15. **Criminal law ☜450—Question whether defendant knew of motive of witness to accuse him invades jury's province.**

A question asked a defendant as to whether he knew of any motive of the prosecuting witness to accuse defendant of conspiracy was rightly excluded, since that was a question for the jury, not for the witness to determine.

16. **Criminal law ☜372(6)—Proof of violations of liquor laws held admissible to show conspiracy to violate Reed Amendment.**

In a prosecution for conspiracy to violate Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), by unlawfully transporting liquor in interstate commerce, proof that two of the defendants had been handling liquor, that they were operating automobiles, and that one of them paid a government officer protection money, was pertinent to the question of the formation and existence of the conspiracy and was not erroneous because tending to show the commission of other offenses.

17. **Criminal law ☜665(4)—Witnesses ☜267—Relaxation from rule excluding witnesses and extent of cross-examination rest in court's discretion.**

The extent to which the rule of the trial court for the exclusion of witnesses from the courtroom shall be enforced or relaxed, and the limitations upon the extent of cross-examination, were within the sound discretion of the trial judge.

18. **Criminal law ☜1171(5)—Argument directing attention to defendant's failure to testify is reversible error.**

Remarks by the district attorney manifestly designed to direct the attention of the jury to the failure of the defendant to testify would constitute reversible error, unless otherwise overcome.

19. **Criminal law ☜721(5)—Prosecuting attorney can emphasize fact that certain testimony is uncontradicted.**

The district attorney has the right to emphasize the fact that the testimony on behalf of the government on certain points was uncontradicted, though one of the defendants did not testify in his own behalf.

20. **Criminal law ☜730(10)—Reference to failure to deny conversations held cured by court's statement.**

Even if an argument by the district attorney that testimony for the government as to conversations with the defendant, who did not testify, was uncontradicted, was a comment upon the failure of the defendant to testify, contrary to Act March 16, 1878 (Comp. St. § 1465), it was cured by the judge's statement to the jury they could indulge in no presumption from the fact that that defendant did not take the stand, whereupon the district attorney requested permission to withdraw the remarks.

21. **Criminal law ☜730(1)—Improper argument generally not ground for reversal if jury is explicitly instructed to disregard it.**

The general rule is that improper argument of a prosecutor is no ground for reversal, where the jury is explicitly instructed to disregard it.

22. **Criminal law ☜787(1)—Court may call attention to failure to testify by charge that it could not be considered.**

Not every reference to a defendant's failure to testify is necessarily prejudicial, since the trial court may properly call attention to such failure in connection with an instruction that such fact is not to be considered against defendant.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**23. Criminal law ⚖➡762(3)—Expression of opinion as to party making telephone call held not error.**

Where the telephone record showed several long distance calls by a party having the same last name of one defendant, but defendant denied making all of the calls except one, and his brother testified he made all the other calls, it was not error for the judge to state that he did not put much credence in that testimony.

**24. Criminal law ⚖➡829(9)—Requested instruction on presumption of innocence held sufficiently covered.**

A requested instruction that the indictment creates no presumption of guilt against defendants was sufficiently covered by a general instruction that the law presumes the defendants to be innocent and that the presumption stands until overcome by competent and credible testimony.

**25. Criminal law ⚖➡309—Defendants not presumed to be of good character.**

A request for an instruction that defendants were presumed to be innocent of any crime whatever was properly denied, since in the United States courts there is no presumption that a defendant charged with crime is of good character.

**26. Criminal law ⚖➡814(3)—Evidence held not to require instruction former indictment of defendant on which he was acquitted was incompetent.**

It was not error to refuse a request to instruct the jury that the fact that defendant had been indicted for another crime and had been acquitted makes the evidence of that indictment incompetent for any purpose, where there was no evidence that the defendant, shown to have been indicted, had been acquitted, and the colloquies of counsel suggested a possible conviction, a reversal, and a subsequent disposition of the case without further verdict.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Joe Robilio and others were convicted of conspiracy to violate the Reed Amendment, and they bring error. Affirmed.

Charles M. Bryan, of Memphis, Tenn. (A. G. Brode and Prewitt Semmes, both of Memphis, Tenn., on the brief), for plaintiffs in error.

W. H. Fisher, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray and A. A. Hornsby, both of Memphis, Tenn., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. This writ is brought to review judgments on conviction of the several plaintiffs in error upon an indictment under section 37 of the Penal Code (Comp. St. § 10201), charging conspiracy to violate the Reed Amendment (Act March 3, 1917, c. 162, 39 Stat. 1058, 1069 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a]).

[1] Criticism is made of the denial of motion to quash the indictment upon each of four grounds, none of which we think meritorious. The proposition that the Reed Amendment was repealed by the Volstead Act is without force as applied to the instant case (41 Stat. 305). The indictment charges that the offense here in question was committed "on or about the ——— day of April, A. D. 1919." The Volstead Act did not take effect until January 16, 1920 (Dillon v. Gloss, 256 U. S. 368, 41 Sup. Ct. 510, 65 L. Ed. 994), and expressly provided (section

35 of title 2) that it should not "relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws." Under this clause we have more than once held that prosecutions under the revenue sections committed before January, 1920, were saved. Howard v. United States, 271 Fed. 301, 302; Tisch v. United States, 274 Fed. 208; Baird v. United States, 279 Fed. 509, 511. No reason is apparent why the same rule should not apply to prosecutions under the Reed Amendment.

[2] The contention that an attempt to violate the Reed Amendment cannot be charged as a conspiracy, for the reasons that the indictment charges no other acts than such as are embraced in an attempt to violate that amendment, and that the latter by its terms creates an offense in which the co-operation of various parties is necessary, such necessary co-operation effecting only a violation of the act—which is made a specific offense and is punishable by a specific penalty—is sufficiently answered by the decision of this court in Laughter v. United States, 259 Fed. 94, 97, 170 C. C. A. 162.

[3] Equally without merit, in our opinion, is the criticism of the indictment as indefinite and uncertain. It charges a conspiracy "to commit the acts made offenses and crimes against the United States of America by the act of Congress approved March 3, 1917, known as the 'Reed Amendment.' That is to say, the said defendants, conspired, combined, confederated and agreed that they would unlawfully, willfully and knowingly order, purchase and cause intoxicating liquors to be transported in interstate commerce, from Caruthersville, in the state of Missouri, to Memphis, in the state of Tennessee, in a water conveyance upon the Mississippi river; said intoxicating liquors being ordered, purchased and transported for other than scientific, sacramental, medicinal or mechanical purposes; it being then and there in violation of the laws of the state of Tennessee to manufacture or sell therein intoxicating liquors."

In our opinion this indictment informed defendants of the charge made against them sufficiently to enable them to prepare for trial and to insure protection against double jeopardy. Rudner v. United States (C. C. A. 6) 281 Fed. 516, 518.

[4, 5] The suggestion that on account of the indefiniteness of the charges in the instant indictment Berryman was not sufficiently informed of the nature of the accusation to enable him to plead (perhaps to know whether he could plead) a former conviction for a substantive offense under the Reed Amendment we think not well taken. Had a more definite statement of the date of the offense been thought necessary, a bill of particulars should have furnished the desired information. Dierkes v. United States (C. C. A. 6) 274 Fed. 75, 76; Rudner v. United States, supra, at page 518. In fact, Berryman's testimony suggests lack of ground for apprehension of double jeopardy. He says he was convicted of violating the Reed Amendment "in January, 1919;" the indictment before us (as already stated) lays the offense "on or about the ——— day of April, 1919;" and the time given in the government's testimony is "along about the first week in April, 1919." Moreover, it is the natural inference from Berryman's testimony that his former conviction was for an offense in no way connect-

ed with the conspiracy here in question. He says he never brought in whisky by boat from Caruthersville to Memphis (which is the subject of the conspiracy here charged), but that he was "caught with a load of whisky around Somerville, bringing it into the state of Tennessee." No contention is made that liquor brought in by water from Caruthersville to Memphis would naturally find its way to or through Somerville. The overt act charged in the indictment here is the landing, keeping, and making repairs upon two specified boats at a certain place in Memphis "during the month of April, A. D. 1919," "for the purpose and to aid the said defendants in transporting intoxicating liquors from Caruthersville, in the state of Missouri, to Memphis, in the state of Tennessee." The Laughter Case, supra, lends no support to a view that Berryman's conviction in question would bar prosecution for the conspiracy here involved. The motion to quash the indictment was properly overruled.

This case belongs to the general group which includes the Tucker-man (No. 3791), Wilkes (No. 3810), Berryman (No. 3826, C. C. A.) 291 Fed. 958, Wallace (No. 3800, C. C. A. 291 Fed. 972, and other cases of alleged bribery of Tyree Taylor, this day decided by this court. In the instant case also Tyree Taylor and his wife testified for the government. Some of the questions raised here are discussed in one or more of the other cases referred to. We shall limit our discussion to propositions not there fully treated.

[6, 7] After each defendant but Wallace had testified in his own behalf, the government introduced testimony of Taylor's reputation for truth and veracity. Defendants contend that such reputation had not been directly attacked, and that testimony in its support was thus inadmissible. We find it unnecessary to consider this proposition as applied to the instant case, for the reason that the record does not show that it was presented to the trial court. To the question whether the witness knew Taylor's general reputation for truth and veracity objection was made without stating the ground thereof, and at the close of the direct examination of the witness counsel objected "to the entire testimony, and ask that it be stricken out." It is a commonplace that the overruling of an objection whose ground is not stated is not reviewable as of right. Robinson v. Van Hooser (C. C. A. 6) 196 Fed. at page 624, 116 C. C. A. 294. This rule is not changed by section 269 of the Judicial Code, as amended in 1919 (Comp. St. Ann. Supp. 1919, § 1246), which declares that on the hearing "of any * * * writ of error, * * * in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Previous to this amendment, federal courts of review, in the exercise of a sound judicial discretion and to prevent miscarriage of justice, sometimes noticed error in the trial of a criminal case although the question was not properly raised at the trial, by objection and exception. Wiborg v. United States, 163 U. S. 632, 659, 16 Sup. Ct. 1127, 41 L. Ed. 289; Crawford v. United States, 212 U. S. 183, 194, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Tucker v. United States (C. C. A. 6) 224 Fed. 833, 841, 140 C. C. A. 279. In our opinion, while amended

section 269 does not attempt to sanction a violation of substantial rights, or to disregard prejudice (West v. United States [C. C. A. 6] 258 Fed. 413, 415, 169 C. C. A. 429; Consolidation Co. v. Peninsular Co. [C. C. A. 6] 272 Fed. 625, 633), it does not extend the authority of the reviewing court, in the interest of a plaintiff in error, beyond that permissible under the previously existing rule for preventing miscarriage of justice (Katz v. United States [C. C. A. 1] 273 Fed. 157, 158, 159). A prominent object seems to have been to prevent reversal of judgments for mere technical errors which did not prejudice. Kirk v. United States (C. C. A. 8) 280 Fed. 506, 507; Lucadamo v. United States (C. C. A. 2) 280 Fed. 653, 658; Honeycutt v. United States (C. C. A. 4) 277 Fed. 941, 944; Southern Oil Corp. v. Waggoner (C. C. A. 5) 276 Fed. 487, 490. The statute has been so treated by us. It is the generally accepted rule that the section does not dispense with the necessity of objection or exception, both as respects the admission and rejection of testimony and the charge to the jury. Carson v. Jackson, 281 Fed. 411, 416, 417, 52 App. D. C. 51; Thompson v. United States (C. C. A. 3) 283 Fed. 895, 896, 897; Roberts v. United States (C. C. A. 8) 283 Fed. 960, 967; Rosen v. United States (C. C. A. 2) 271 Fed. 651, 653; De Jianne v. United States (C. C. A. 3) 282 Fed. 737, 739; Standard v. Allen, 267 Fed. 645, 647, 50 App. D. C. 87. And such has been the practice of this court. Loewenthal v. United States (C. C. A. 6) 274 Fed. at page 568; Morenkow v. United States (C. C. A. 6) 276 Fed. at page 294. It has also been held that the effect of the amended section is to put upon plaintiff in error the burden of showing that the alleged error was prejudicial, or, otherwise stated, that on the whole record substantial right has been denied. Rich v. United States (C. C. A. 8) 271 Fed. 566, 569, 570; Trope v. United States (C. C. A. 8) 276 Fed. 348, 351; Hall v. United States (C. C. A. 8) 277 Fed. 19, 23. It has more than once been held that reversal will not be had for erroneous action on the trial where the evidence clearly shows, or is convincing, that plaintiff in error was guilty. Horning v. District of Columbia, 254 U. S. 135, 139, 41 Sup. Ct. 53, 65 L. Ed. 185; Carpenter v. United States (C. C. A. 4) 280 Fed. 598, 600.

[8] Moreover, the testimony of the witnesses in support of Taylor's reputation, confined as it was largely to his home town, distant from Memphis, and several years before his arrest in 1919, upon its face seems unlikely to have caused prejudice. These considerations seem to forbid reversal on account of refusal to strike out certain of the testimony, because based upon conditions existing more than five years before the trial. If, as applied to the instant case, the testimony was without probative force (which we do not declare), it could scarcely have been so prejudicial as to justify reversal.

Complaint is made of the admission of testimony of certain alleged telephone conversations between Mrs. Taylor and certain of the defendants, notably Wallace, against the objection that the respective witnesses were not acquainted with the voice of the person purporting to be such defendant, and had no sufficient means of identifying him. Taylor had testified that he had a telephone (inferably Main 5972) listed in his name at Mrs. Harris' apartments at 283 Union avenue; that defendants knew he had a telephone, and thinks all of them

knew it was in the house at 283 Union; that Wallace's telephone number at his garage was Main 1511; that Robilio had a telephone Main 1613, and that Berryman's number was Main 5665; that it was understood between him and defendants that any of them would call him or Mrs. Harris at the house, and that either would understand who the caller was and would give the information desired at the time; that under that agreement they (defendants) called Main 5972 by telephone; that Wallace called more than either of the others, and that Berryman called once or twice; that the person calling would usually call Taylor and tell him to come to Wallace's garage.

Mrs. Taylor (who had then never met defendant Wallace) testified that Wallace called her by telephone and "would tell me who he was." Following objection of incompetency unless the witness knew the voice, she testified that Wallace's number was Main 1511; that when the person who stated he was Wallace called he would usually say he wanted to see Taylor, and if he was not there would leave a message for him to come over to Wallace's garage; that the party representing himself as Wallace had also told her to tell Taylor to call him up; that Wallace's telephone number was known to her; that she had been instructed by Taylor to give clearances if she was asked by any of the four defendants. A special agent of the Department of Justice, who had not met Wallace or Mrs. Taylor, testified to a tapping of the wires leading to Mrs. Harris' apartment whereby he could overhear every conversation going in or out over her telephone from the 14th to the 21st of May; that on a given date a woman from Mrs. Harris' telephone called Main 1511 (Wallace's telephone) and asked whether the latter was there; that a man answered saying, "This is Andy talking," whereupon Mrs. Harris said that Taylor told her to advise him (Wallace) that "everything is all right;" that on another date a man called for Taylor over Mrs. Harris' telephone, that Mrs. Harris answered, and was told to tell Taylor that Andy Wallace called and wants him; that Taylor then came to the telephone and addressed the other party as "Andy;" that on another day a man called over Taylor's telephone, that Mrs. Harris answered and was told to tell Taylor to call Wallace when he came in; and that on the same day Taylor called Wallace's number and asked for him; that a man came to the telephone and Taylor said, "What do you know? This is Taylor talking," and that the other man said he knew nothing, "what do you know?" Taylor replying, "A little bit more, perhaps. I will be there in about 30 minutes." Another government agent testified to listening in on Mrs. Harris' telephone between the dates before mentioned, and hearing a call from some man (answered by Mrs. Harris) inquiring whether Taylor was there, and asking that he be told to "call Wallace when he comes in." The testimony was relevant to the issue.

[9, 10] It was well settled that it is necessary to the competency of testimony of telephone conversations that there be some evidence tending to establish the identity of the person with whom the conversation is alleged to have been had. It is not imperatively necessary that the voice of the person talking be recognized by the other party to the conversation. It is, however, the rule that the mere statement of identity by the party calling is not sufficient proof thereof. On the other

hand, attendant circumstances may properly be taken into account, prominent among which is the fact that the person to be identified answers the call of his own telephone or calls from a telephone known to be his. Whether or not the testimony of Mrs. Taylor, standing alone, would sufficiently establish her identification of Wallace, we need not determine, for we think it clear that taking the circumstances into account, including the arrangement testified to by Taylor, the calls received by and sent from Wallace's telephone, and in turn sent from and received by Mrs. Harris' telephone, there was substantial evidence tending to establish Wallace's identity. The trial court limited to Wallace's case alone the consideration of the testimony of the government's agents. We think there was at least no prejudicial error in overruling the objections to the testimony in question. If not strictly competent when introduced, it was made competent by a consideration of all the testimony. In Wallace v. United States (No. 3800) 291 Fed. 972, this day decided by this court, the question we are considering was discussed and the telephone conversations held admissible. We reach the same conclusion here, which we think fully sustained by the authorities cited in No. 3800. The objection that according to Taylor's testimony the conspiracy had ended before the telephone conversations in question does not impress us as meritorious. The question was, to say the least, one of fact, taking into account Taylor's language, as well as the telephone conversations.

Complaint is made of the introduction of copies (made by an agent of the Department of Justice) of records of certain telephone calls from Caruthersville, Mo., to Memphis, Tenn. (as shown by the telephone exchange slips), claimed to have been made by the respective defendants at various times during the period covered by the alleged conspiracy. For example: April 3, 1919, Wallace calling Berryman, telephone M-5663, from telephone 263, Caruthersville, Fisher's Bar (the latter being a liquor house and saloon); April 10, 1919, Wallace, from Fisher's Bar, Caruthersville, calling Robilio at Memphis, M-1637; April 16, call from Fisher's Bar, Caruthersville, C. Oursler calling R. A. Berryman, Memphis, M-5663; May 17, 1919, from Fisher's Bar, Caruthersville, Oursler calling Andy Wallace, telephone M-1511 ("M" meaning "Main").

[11-13] We think the evidence properly admitted. As stated by the local manager of the telephone company at Caruthersville, the records were "of calls made from different saloons in Caruthersville to Memphis." In most of the cases the person called was one of the defendants. In view of the testimony as to the methods of getting clearances and otherwise, we think the testimony relevant. We also think it competent. The witness made the copies (so far as they went) from the original records which took the form of toll tickets exhibited to him by the telephone manager in the spring of 1919. The manager testified that the records were correct and were made under his supervision. Being records made in due course of daily business in a quasi public office, they were not rendered incompetent because the tickets were actually filled out by the operator. Billingsley v. United States (C. C. A. 6) 274 Fed. 86, 90, 91; cf. Templar Motors Co. v. Pump Co. (No. 3774) 289 Fed. 24, decided by this court May 8, 1923. Since the tak-

ing of the copies the original tickets had been destroyed in due course of the telephone company's business, and secondary evidence was therefore necessary. A copy made by the witness was thus admissible. Nor did the testimony lose relevancy because a copy of the complete ticket was not taken. The complete ticket includes the date of the call, the originating point, the party's name "when they can get it," the place called (either party or telephone number), the time talked, and the time when call was completed. The portions omitted related to whether or not connection was obtained, the time of the day the call was put in, and who actually put it in. It thus did not show whether or not telephone conversation between the party called and the party calling was actually had. But the fact of the attempt to effect conversations between the parties in question, between the points, from the places and during the period stated, had some relevancy.

[14, 15] Complaint is made of the exclusion of proffered testimony of one of the defendants, to the effect that since the indictments here Taylor had told the witness that he (Taylor) had not had the defendant witness indicted, and had asked him to see Berryman and another person "and tell them how much will it be worth to them to throw the cases out," and that if the witness would do that "there would not be nothing to my case, not to worry." The court excluded the testimony on the sole ground that no question relating to that subject had been propounded to Taylor. Assuming, for the purposes of this opinion, that the proffered testimony, relating to the corruption or attempted corruption of Taylor, was competent without his attention being first called to the subject, we think the judgment should not be reversed on account of the ruling in question. Compliance with the court's ruling by first asking leave to put the question to Taylor would seem easy and natural. If defendants preferred to lose the benefit of the testimony rather than comply with such requirement (which presumably was still open), the natural inference would be that they did not regard the testimony so important, or so desirable, as to make the ruling in question reversible error. The same considerations apply to evidence of a similar nature offered by Berryman and excluded. We may add that in our opinion the question in terms put to Berryman, whether he knew of any motive in Taylor to accuse Berryman of conspiracy, was rightly excluded. That was a question for the jury, not for the witness, to determine.

[16] We see no merit in the contention that the general rule forbidding proof of other and distinct offenses was violated by the testimony that two of the defendants were handling liquor, that another had not long before been a bootlegger, that two of the defendants owned or were operating automobiles, and that Wallace from time to time paid Taylor protection money for the four defendants during the period covered by the alleged conspiracy. The testimony was more or less pertinent to the question of the formation and existence of the conspiracy.

[17] The extent to which the rule of the court below for the exclusion of witnesses from the courtroom should be enforced or relaxed was within the sound discretion of the trial judge, and we can-

not say it was abused. The same is true of the limitations put in some cases upon the extent of cross-examination.

[18, 19] In the course of the argument to the jury the district attorney said:

"Andy Wallace was the spokesman of this partnership, and yet no one goes on the stand and says that the conversation did not occur."

And again:

"Tyree Taylor says that he had this conversation with Andy Wallace, and no man goes on the stand to deny it—"

And again:

"Mrs. Taylor says she had these conversations with Andy Wallace, and no one comes before this jury to deny them."

These remarks are criticized as violating the statute (Act March 16, 1878, c. 37, 20 Stat. 30 [Comp. St. § 1465]), which provides that the failure of a defendant in a criminal case voluntarily to testify "shall not create any presumption against him." If these remarks were manifestly designed to direct the attention of the jury to Wallace's failure to testify (or, perhaps, if they had such necessary effect), they would constitute reversible error, unless otherwise overcome. Wilson v. United States, 149 U. S. 60, 65, 13 Sup. Ct. 765, 37 L. Ed. 650; Shea v. United States (C. C. A. 6) 251 Fed. 440, 445, 163 C. C. A. 458. Neither in terms commented upon defendant Wallace's failure to testify. The district attorney had the right to emphasize the fact that the testimony on certain points was uncontradicted.[1] The record does not indicate what conversation between Taylor and Wallace was the subject of the comment, and it thus does not necessarily appear that no one but Wallace and Taylor were present at any of the interviews which occurred at the garage.

[20] But assuming that the asserted conversation was one that nobody but Wallace could deny (as statements made over the telephone by a person supposed by Mrs. Taylor to be Wallace might be), we think whatever error was committed was cured. Immediately following the last of the three remarks the judge told the jury that reference

[1] Lefkowitz v. United States (C. C. A. 2) 273 Fed. 664, 667, 668; Sidebotham v. United States (C. C. A. 9) 253 Fed. 417, 421, 165 C. C. A. 159; Jackson v. United States (C. C. A. 9) 102 Fed. 473, 487, 42 C. C. A. 452, 466, where the prosecutor's inquiry, "Why didn't the defendant put a sworn witness on the stand?" was held not necessarily to imply, and not ordinarily to be understood to mean that comment was being made on the defendant's failure to testify. Carlisle v. United States (C. C. A. 4) 194 Fed. 827, 114 C. C. A. 531, where an argument by the prosecuting counsel that the government had made out a prima facie case which had not been contradicted was held not reversible error. Rose v. United States (C. C. A. 8) 227 Fed. 357, 363, 142 C. C. A. 53, 59, where an argument that the evidence "is such that no sane man can arrive at any other conclusion" than that the defendant was guilty, followed by an inquiry, "Who is it that denies that Mr. Warnen told the truth when he went on the witness stand?" was held to be no more than an argument that the evidence of the government is uncontradicted and unexplained.

to the fact that defendant Wallace did not take the stand was incompetent, and that—

"You can indulge no presumption one way or the other by reason of the fact that he did not go upon the stand. That is a right he may exercise if he wants to, and no presumption of any kind can be indulged in, and no conclusion drawn because he did not do so, and any reference to the fact that he did not do so is improper."

Thereupon the district attorney said, "I will ask permission to withdraw those remarks," whereupon the court added:

"And any remark made just now or at any time during the argument is not proper and must not be considered by the jury."

The district attorney thereupon repeated, "We withdraw the remarks."

[21, 22] The general rule is that improper argument of a prosecutor is no ground for reversal where the jury is explicitly directed to disregard it. Dunlop v. United States, 165 U. S. 486, 498, 17 Sup. Ct. 375, 41 L. Ed. 799; Phelan v. United States (C. C. A. 9) 249 Fed. 43, 45, 161 C. C. A. 103; McHenry v. United States, 276 Fed. 761, 768, 51 App. D. C. 119; Bettman v. United States (C. C. A. 6) 224 Fed. 819, 831, 140 C. C. A. 265; Lanier v. United States (C. C. A. 5) 276 Fed. 699, 701, where improper comment by a prosecuting officer upon the fact that the defendant did not take the stand was held not ground for reversal, where the court sustained an objection and fully instructed the jury as to defendant's privilege and that the remark was improper and should not be considered. The fact that in that case no motion for withdrawal of the case from the jury appears to have been made is not, in our opinion, sufficient to distinguish it from the instant case, in view of all the circumstances. Not every reference to a defendant's failure to testify is necessarily prejudicial. The trial court may properly call attention to defendant's failure to testify, in connection with an instruction that the fact that he has not so testified is not to be considered against him. Hanish v. United States (C. C. A. 7) 227 Fed. 584, 586, 142 C. C. A. 216; Robilio v. United States (C. C. A. 6) 259 Fed. 101, 102, 170 C. C. A. 169.

[23] Two criticisms of the charge require attention. The first is this: The Caruthersville telephone record before referred to showed several calls by "Oursler," one by "C. Oursler" for "Berryman," two others for Berryman by "Oursler," another call for "C. D. Wallace" by "Oursler," and another for "Andy Wallace" by "Oursler," and still another for a woman apparently not connected with defendants, also by "Oursler." The government seems to have contended, at least originally, that defendant Oursler made all these calls. Defendant denied that he made any of them except for the woman, and defendant's brother, C. B. Oursler, testified that he made all the other calls attributed to defendant. The judge said that he did not put much credence in that testimony. Counsel called the court's attention to the fact that the record disclosed but one call by "C. Oursler." The judge then stated that fact to the jury, but expressed the same opinion, notwithstanding the fact just stated. We think this not reversible error. It was within the judge's province to state his view of the testimony,

guarded, as it was, by the express statement that he was merely stating his own opinion and leaving it to the jurors to say how they viewed it, and without being governed by the court's opinion. The earlier treatment of the Oursler calls as made by "C. Oursler" was properly regarded by counsel as an inadvertence, which, as said, was corrected.

The other feature relates to the credit to be given to the testimony of Tyree Taylor and his wife. The question is whether this instruction is to be classified with those given in the Tuckerman, Wilkes, and Berryman Cases just referred to, and so to be held not to constitute error, or whether it should be classified with the instruction in the Wallace Case (No. 3800) 291 Fed. 972, which we have held to constitute reversible error. We think the instruction here complained of falls within the former category.

Complaint is made of the refusal to instruct the jury as follows:

"The court charges you that the indictment of these defendants creates no presumption of guilt against them, but that they enter this trial presumed to be innocent of any crime."

[24, 25] There was no error in refusing this instruction. So far as confined to presumption of innocence of the crime charged in the indictment, it is sufficiently covered by the general instruction to the jury which we quote in the margin.[2] If it was intended to ask an instruction that the defendants were presumed to be innocent of any crime whatever, the request was properly denied. In the courts of the United States there is no presumption that a defendant charged with crime is of good character. Greer v. United States, 245 U. S. 559, 38 Sup. Ct. 209, 62 L. Ed. 469; Sylvia v. United States (C. C. A. 6) 264 Fed. 593, 596.

[26] We think no error was committed in refusing specifically to instruct the jury that the fact that any defendant may have been indicted for any other crime, and acquitted of the charges, makes the evidence of that indictment incompetent for any purpose. This apparently was aimed at Oursler's testimony. We are cited to no evidence that he was acquitted of the charge mentioned in his testimony. The statement is only that he was "not convicted." The subsequent question of the district attorney, in connection with colloquies of counsel, suggest a possible conviction, a reversal, and subsequent disposition of the case without further verdict.

We have not attempted to discuss all the numerous assignments of error presented. We have, however, considered them all, and are of opinion that the record does not disclose prejudicial and reversible error. The evidence for the government, if believed, justified the conviction of each of the plaintiffs in error, and we are not impressed that they have been denied a fair trial.

The judgment of the District Court is accordingly affirmed.

2 "The defendants plead not guilty to this indictment, and the law presumes the defendants to be innocent, and this presumption stands until rebutted and overcome by competent and credible testimony, and under their plea of not guilty to the indictment in this case, the burden rests upon the government to establish each and every material element necessary to constitute their guilt beyond a reasonable doubt before you would be warranted in finding them guilty of any offense."